### ROGERS and others *vs.* KNEELAND.

Where a *factor* was sued for the breach of warranty as to the quality of cotton sold by him, and his principals, after issue joined in such suit, on his refusal to pay over to them a balance of the proceeds of such sale until indemnified against the damages and costs to which he might be subjected in consequence of such suit, addressed a note in writing to third persons, in which, after stating the existence of the suit, that the sale relative to which it was brought was made on their account, that they were of course liable for any damages that might be recovered, and were desirous of providing a full indemnity to their factor, they authorized and requested the persons to whom the note was addressed to pay to their factor such sums of money as he might be required to pay, as well for any damages that should happen to be recovered against him in the suit, or otherwise in relation to the sale of the cotton, as also all costs and charges to which he might necessarily be put in that behalf, the advances to be made from time to time as occasion might require, or otherwise at the election of the factor, charging such advances to the account of the principals; and the persons to whom the note was addressed, endorsed thereon and signed an engagement in this form : " We will promptly comply with the request of Messrs. L. M. & Sons as contained in the within order," which was delivered to and accepted by the factor, and upon the receipt of which he paid over the balance due to his principals ; *it was held*, that the promise of such third persons was valid within the *statute of frauds ;* that the implied agreement on the part of the factor *to continue the defence of the suit*, and make the necessary advances in the progress of the same, was a good and sufficient consideration to render the promise of such third persons binding; and that the consideration being necessarily to be implied from the terms of the instrument, must be considered as *in writing* within the meaning of the statute. It was *further held*, that the principals having acknowledged their liability for the damages that might be recovered against their factor, after possessing the means of ascertaining the grounds upon which damages were claimed from him, the parties, who at the request of the principals had undertaken to pay such damages, were precluded in a suit on their promise,

from proving that the factor had acted *without authority* and *contrary to instructions*, in selling the cotton by sample.

Even though the sale by sample had been shown to have been contrary to instructions, the acknowledgment of liability by the principals and their procurement of an indemnity, under the circumstances of the case, would have been held a *ratification* of such sale.

It is a general principle, applicable to all instruments or agreements, that whatever may be fairly implied from the terms or language of an instrument, is in judgment of law contained in it.

Where there are two instruments, one full and explicit as to the intent and meaning of the parties, and the other general, but *refering to and adopting* the stipulations contained in the former—in giving a construction to the agreement of the parties, both instruments will be considered as forming but one agreement.

*It seems*, that since the *Revised Statutes*, the requirement of the statute of frauds that the *consideration* as well as the *promise*, in cases of engagement for the debt of another, *shall be in writing*, applies as well to *agreements under seal* as to agreements not under seal.

So, *it seems*, the *statute of frauds* applies to all cases of suretyship, whether the agreement of the surety be collateral to a *previous* or *concurrent* promise of the principal debtor.

Where a third person, upon a new and sufficient consideration moving between him and a debtor, promises to pay monies owing by such debtor, such promise is not within the statute, notwithstanding that the debtor remain liable to the creditor.

Where a promise to answer for the default of another is in consideration of certain acts to be done or performed by the party to whom the promise is made, the performance of such acts may be shown by *parol*.

ERROR from the supreme court. Kneeland sued N. Rogers and two others, his partners, in the superior court of the city of New York, on a *guaranty* given under the following circumstances: Kneeland, as the factor or agent of a mercantile firm transacting business in *Alabama* under the name and style of *L. Morgan & Sons*, having sold at the city of New York 124 bales of cotton, belonging to that firm, to one James Andrews, Andrews, in *January term*, 1822, commenced a suit against Kneeland for a breach of warranty in the sale of the cotton, alleging a *sale by sample*, and that the cotton delivered was not, at the time of the delivery thereof, of the like goodness and quality with the sample exhibited, and issue was joined in the suit thus commenced, in the *same term* of January, 1822. All the proceeds of the cotton sold to Andrews had been paid over by Kneeland to his principals,

except the sum of $463,31 ; and on being called on for the payment of that ballance, he informed his principals of the commencement of the suit of Andrews against him, and told them that before he would part with such ballance, he must be indemnified against the suit.    L. Morgan & Sons thereupon drew up an instrument in this form :   " New York, August 5, 1822.    Messrs. N. Rogers & Sons—Gentlemen : A suit has lately been commenced in the supreme court of this state, by James Andrews of Boston against Henry Kneeland of this city, relative to a sale heretofore made by Mr. Kneeland to Mr. Andrews of a parcel of cotton, then belonging to us, in which suit the plaintiff has laid his damages at two thousand five hunded dollars.    The sale having been made for our account, we are of course liable for any damages that may be recovered in the suit ; and being desirous of providing a full indemnity in this respect to Mr. Kneeland, we hereby authorize and request you to pay him all such sums of money as he may be required to pay, as well for any damages that shall happen to be recovered against him in the suit above mentioned, or otherwise, in relation to the sale of the said cotton, as also all costs and charges to which he may necessarily be put in that behalf, including reasonsble counsel fees to the counsel to be by him employed in relation to the said business—your advances to Mr. Kneeland, as above, to be made from time to time as occasion may require, or otherwise at his election.  By complying with this request, and charging your advances to our account, you will oblige your obed't serv'ts."  Which instrument they signed, and procured the signatures of the defendants to an *endorsement* thereon in this form :  " We will promptly comply with the request of Messrs. L. Morgan & Sons as contained in the within order.  New York, Augnst 5, 1832.  (Signed,) N. Rogers & Sons."    The instrument thus signed was, on the day of its date, delivered by L. Morgan & Sons to Kneeland, who, on receiving the same, paid over the ballance of $463,31 to L. Morgan & Sons, and took their receipt in this form :  " Rec'd New York, 5th August, 1822, of Bogert and Kneeland, four hundred and sixty-three $\frac{31}{100}$ dollars in full to this date.  (Signed,) L. Morgan and Sons."    This sum was

on the same day paid over by L. Morgan & Sons to the defendants in this cause, to whom L. Morgan & Sons were at the time largely indebted. The suit of Andrews against Kneeland was prosecuted, and in March, 1827, Andrews obtained a verdict for $1262,06, and in May term, 1827, judgment was signed for the above damages, and $380,86 costs; whereupon, at a subsequent day in the same term, Kneeland commenced his suit on the *guaranty* given by the defendants. The declaration contained seven *special counts*, and one general count for monies lent and advanced, monies paid, and monies had and received. The defendants *pleaded* non-assumpsit and several special pleas, which were demurred to and adjudged bad on demurrer. On the trial of the cause, the letter of L. Morgan & Sons, and the endorsement of the memorandum thereon, were proved. The record of the recovery in favor of Andrews against the plaintiff was produced, and the payment by him of the judgment and of the costs and counsel fees of defence proved. The plaintiff here rested.

The defendants offered to prove that the plaintiff, in the sale of the cotton to Andrews, sold the same by sample without authority to do so, and contrary to instructions; which evidence was objected to, and the presiding judge decided that if the *Morgans* had received the proceeds of the cotton, he would sustain the objection; whereupon it was proved that previous to the 5th August, 1822, the whole proceeds of the cotton, with the exception of $463,31, had been paid over to them. The same witness who proved the payment of the proceeds as above, also testified to the payment of the $463,31, on the guaranty being delivered to the plaintiff, which evidence was objected to by the defendants, as proving a consideration not expressed in the paper writing and memorandum endorsed thereon for the promise of the defendants: but the evidence was received. The defendants then offered to prove, if L. Morgan & Sons had acknowledged there liability to pay the plaintiff the amount recovered in the suit against him, that such acknowledgment was made in ignorance of the facts in regard to the sale of the cotton; whereupon the judge ruled that any fraud, concealment or misrepresentation of the plaintiff might be shown, but that

the residue of the evidence offered was inadmissible. The defendants' counsel then insisted that the plaintiff ought not to recover, 1. Because the promise of the defendants, independent of the statute of frauds, was void for want of consideration ; 2. That under the statute of frauds, the promise must not only be in writing, but must be suported by a consideration, and that must be in writing ; and 3. That no evidence of a consideration for the promise had been offered, if such proof was allowable. The presiding judge ruled that the plaintiff ought not to be barred from a recovery on either of the above grounds. The jury found a verdict for the plaintiff for $2437,25. Exceptions having been taken to the several decisions, they were sbsequently argued before the court, who overruled the same and denied a motion for a new trial, to whlch decision also the defendants excepted. The defendants sued out a writ of error, removing the record into the supreme court of this state where the cause was argued, and that court *affirmed* the judgment af the superior court of the city of New York. *Vide Opinion deliverd in this case,* 10 *Wendell,* 248, *&c.* Whereupon the defendants below removed the record into this court by writ of error. The cause was argued here by

*A. G. Rogers & H. Ketchum,* for plaintiffs in error.

*G. Griffin & B. F. Butler,* for the defendant in error.

The profession are referred to 10th Wendell, pages 224 to 248, for the arguments of counsel in this case in the supreme court, which were substantially reiterated in this court.

The following opinions were delivered :

By the CHANCELLOR. The offer to prove that Kneeland had exceeded his authority, in selling the cotton by sample contrary to the express direction of the Morgans, was properly rejected. Such a defence might have been valid, if the suit had been brought against the Morgans upon an implied promise to indemnify Kneeland against a recovery by An-

drews, arising from the relation of principal and agent. To raise such a promise by implication, the agent must show that he was acting within the scope of his authority, or that the principal has ratified his acts, with a full knowledge of the fact of the excess of authority. 2 *Kent's Comm.* 616. But where the principal makes an express promise to indemnify his agent against the consequences of a particular act, which has already been done, or against a recovery which may be had in a suit instituted against the agent on account of such act, the legal presumption is that the principal has made the necessary inquiries, for the purpose of ascertaining whether he ought in justice and equity to indemnify the agent, and has acted on such information. In the present case it is highly improbable that the Morgans agreed to indemnify their agent against the suit of Andrews, without first inquiring as to the nature of the claim made by Andrews in that suit. If so, it lay upon the present plaintiffs in error to show that there was a fraudulent misrepresentation or concealment, on the part of the agent, as to the real facts of the case ; and the court below decided that the defendants might give evidence of fraud, concealment or misrepresentation on the part of Kneeland. It is hardly probable that the Morgans gave express directions to their agent not to sell by sample, unless they had some special reason for so doing ; and if they knew, or had reason to suspect that the cotton had been fraudulently packed, so that a sample taken from a bale in the usual manner would not be a fair represention of the entire bale, they were themselves guilty of a fraudulent concealment—if so, that circumstance alone would have afforded sufficient reason for their adoption of the act of their agent so far as to indemnify him, although he might have exceeded his instructions. The fact that the agent had exceeded his instructions was therefore no defence against an express agreement subsequently made to indemnify him against the claim made by Andrews, unaccompanied as it was with any evidence of fraud or concealment on the part of the agent. If the Morgans knew that Andrews claimed to recover against Kneeland on the ground that the sale was made by sample, which fact was denied by the latter, and they chose to take

ALBANY,
Dec. 1834.

Rogers
v.
Kneeland.

the proceeds of the sale and to give the agent a general indemnity against the suit, they voluntarily assumed the risk of Andrews establishing the fact that the sale was by sample. If they had meant to reserve the right to object that their agent had exceeded his authority, in case a recovery should be had against him upon the ground of a sale by sample, they should have made that exception in their agreement to indemnify the agent against the recovery, if any, which should be had in that suit.

But the principle question in this case arises under the statute of frauds, which I will now proceed to consider. The object of that statute was to prevent a person from being charged or made liable upon a supposed promise, which promise, if actually made, was merely collateral or in the nature of a suretyship for another, but where in fact no such promise was made or intended to be made. In some cases of this kind there was reason to apprehend that actual perjury was committed, for the purpose of establishing such a collateral promise. But in much the greatest number of cases of this description a third person was made liable as upon a contract of suretyship, which contract he never intended to make—from the misrecollection of the witnesses, or a misunderstanding by them as to what was said or intended to be agreed upon by the parties at the time of the making of the supposed promise. The object of the legislature, in passing this act, would therefore have been fully accomplished, if a construction could have been given to the statute requiring only the *promise* itself to be in writing, and subscribed by the party who was to be charged thereby ; leaving the adverse party to establish a sufficient consideration to support such promise, by any kind of legal evidence within his power. It is to be regretted that the courts have felt themselves bound to give a construction to this statute by which it is made, in many cases, to operate as a fraud on those who have acted upon the faith of a written promise of a third person, but which, unfortunately, had no sufficient consideration actually appearing upon the face of the writing. A lawyer might know that the *consideration* was a material part of a written agreement, and that such consideration must be proved, un-

less the agreement was under seal, which imports a consid-

eration. This nice distinction, however, would not be like-
ly to suggest itself to the farmer, the mechanic, the mer-
chant, or to the mere laborer, who was about to take the
promise of a third person as a surety for the one with whom
he was contracting; and even if he knew the construction
which had been put upon this statute by the courts, he would
in many cases find it very difficult to state the real considera-
tion of the collateral promise in legal and technical form, so
as to make a valid agreement. It has however been settled,
both in this state and in England, that a collateral agreement
which is not under seal must have a sufficient consideration
appearing upon its face, or it is not a sufficient agreement in
writing, within the statute of frauds—and this judicial con-
struction has been incorporated into the statute itself, in the
recent revision. *See* 2 *R. S.* 135, § 8, 2. Whether the le-
gislature has not gone still further in the revised statutes, and
inadvertently adopted provisions which will include agree-
ments *under seal* as well as those which are not, contrary to
the decision of the supreme court in *Livingston* v. *Tremper*,
4 *Johns. R.* 416, is a question which it may perhaps be well
for those members of this court who belong to the legislative
department of the government, hereafter to consider.

I cannot agree with the counsel who last addressed the
court in behalf of the defendant in error, that the contract on
the part of the Messrs. Rogers was not a collateral promise to
answer for the debt, default or miscarriage of the Morgans,
within the meaning of the statute of frauds. I apprehend the
object of the statute was to reach every case of mere surety-
ship, whether the agreement of the surety was collateral to a
*previous promise* or liability on the part of the principal debt-
or, or only collateral to a *promise or agreement made at the
same time* with the promise of the surety to indemnify against a
future default or liability of such principal debtor. Where the
whole credit is not given to the person who comes in to an-
swer for another, the promise is collateral; and in all such
cases there must be an agreement in writing, containing a
sufficient consideration to support it—in other words, it is a

ALBANY,
Dec. 1834.

Rogers
v.
Kneeland.

case within the statute. The case of *Skelton* v. *Brewster*, 8 *Johns. R.* 376, decided by the supreme court, and that of *Farley* v. *Cleveland*, 4 *Cowen*, 432, 9 *id.* 639, which was ultimately disposed of in this court, were not cases of mere suretyship on the part of the promissors. In both of those cases the defendants had made the debts their own, by receiving a new and sufficient consideration, not only as between them and the plaintiffs, but also in respect to the original debtors themselves. And although, in the case of *Farley* v. *Cleveland*, the original debtor was still liable to the plaintiff, who had not discharged him from the original indebtedness, the relative situations of the defendant and the original debtor were changed by the consideration which the former had received from the latter. The defendant in that case had become the principal *debtor to the plaintiff,* and the original debtor stood in the situation of a surety that he should pay the debt. So where one party makes an absolute and unconditional promise to pay for goods delivered to another, he becomes the principal debtor to the party delivering the goods; but if he only promises to be answerable that the goods shall be paid for by the person to whom they are to be delivered, such promise is merely collateral to the liability of the other person, and is of course within the statute. In this case there was no consideration passing between the plaintiffs in error and the Morgans, so as to constitute the plaintiffs in error the principal debtors to Kneeland; they only intended to become answerable for the default of the Morgans in indemnifying Kneeland against the payment of damages or costs to be recovered in that suit by Andrews, and for the repayment of monies to be expended in the defence of such suit. I think, however, there is a sufficient consideration appearing upon the face of this agreement, to take it out of the statute of frauds. Where the guaranty or promise to pay the debt of another is made at the same time with the agreement to which it is collateral, and is contained in the same instrument, or endorsed thereon, and refers there to, the whole is to be taken together as an entire agreement, for the purpose of ascertaining whether it is a valid agreement within the provisions of the Statute; and if, from the terms of the whole agreement thus taken together,

a sufficient consideration for the collateral promise of guaranty appears, it is sufficient. *Leonard* v. *Vredenburgh*, 8 *Johns. Rep.* 29. *Bailey* v. *Freeman*, 11 *id.* 221. In the case of such an original and collateral guaranty, if, from the whole agreement taken together as one instrument, it appears the parties contemplated that the promissee should do or refrain from doing something which would be an injury to himself or a benefit to the promissor, as a consideration to support the promise, he may prove by *parol* the necessary facts to show the performance of that part of the agreement. In this case, if the Morgans were originally liable to indemnify Kneeland against the suit of Andrews, he was not bound, upon their responsibility alone, to employ counsel, or to incur any expenses in procuring the attendance of witnesses on the trial, even for the purpose of having a remedy over against them. It would have been sufficient for him, after putting in a plea to the declaration of Andrews, to have given the Morgans notice of the pendency of the suit, so that they might take the necessary steps to defend it, if they wished to save themselves from eventual loss. It appears however, from the letter to the Messrs. Rogers, on which their undertaking is endorsed, and which must therefore be taken as a part of their agreement, that all the parties contemplated that Kneeland was to employ counsel, and incur other expenses in the further defence of the suit, for the benefit of the Morgans; and from the testimony in the case, it appears that he did afterwards employ such counsel, and incurred other expenses in the further defence of the suit, as was contemplated by the agreement itself. This therefore was a sufficient consideration of loss or injury to the promissee, to sustain the agreement, and to make the plaintiffs in error responsible for the fulfilment of their contract to indemnify him against the damages, costs and expenses of that suit; such a consideration of injury to the promissee being thus contemplated and appearing on the agreement itself, he having acted upon the faith of that agreement in the employment of such counsel, and in the further defence of the suit.

For these reasons I shall vote for an affirmance of the judgment of the supreme court.

By Mr. Senator VAN SCHAICK. I have examined the principles involved in this case, and the authorities cited in support of the positions taken on the argument, with minute attention, and the investigation has convinced me that, in deciding the controversy upon established principles of law, and in unison with the equity of the case, it will not be necessary to follow the skilful arrangement of the points proposed, or the nice distinctions which were drawn by the ingenuity and experience of learned counsel.

The cause arises out of a letter written by L. Morgan & Sons to N. Rogers & Sons, with the terms or requests contained in which, Messrs. Rogers, by an endorsement thereon, engage promptly to comply. After mentioning a suit as having been commenced against Henry Kneeland, relative to a sale of cotton belonging to them, and made for their account, the letter asserts their liability for any damages that may be recovered in the suit, in unequivocal language, and concludes by authorizing and requesting the Messrs. Rogers to pay Mr. Kneeland the costs, charges and counsel fees that he may necessarily incur, and the damages that may be recovered against him. It is an order accepted to pay money, contingent upon the occurrence of certain stipulated events. In its essential properties it is not dissimilar to an order drawn on time, by a purchaser, on his agent or business friend, in payment for goods, or by a debtor in liquidation of an account; the delivery of the property fixes the liability of both the drawer and acceptor in the one case, and the discharge of the account is a valuable consideration to bind the parties in the other. It is a contract equally obligatory, so far as the acceptors are concerned, with the plain acceptance of a bill of exchange. In relation to a bill of exchange, the motive or consideration which passed between the drawer and drawee is not a subject of inquiry for the acceptor; neither can he have any right to invalidate his own act, except his defence be fraud; and though it may be admitted that the distinction taken in the books between the acceptance of a bill of exchange and of an order not amounting to a bill of exchange is founded in wisdom; yet the closeness of the resemblance between them, in may cases, induces persons engaged in trade, to look for a

more peremptory fulfilment of the design of the acceptance of an order, in good faith, without reference to considerations exclusive of the act of acceptance, than is required in a common agreement which can only be supported by a distinct legal consideration and promise in writing, between the contracting parties. But even according to that extended construction of the statute of frauds, which has placed so many contracts in jeopardy, I think it is a valid and legal agreement, within the rule established by the cases of *Wain* v. *Warlters*, 5 *East*, 10, *Sears* v. *Brink*, 3 *Johns. R.* 210, *Leonard* v. *Vredenburgh* 8 *id.* 29, and the numerous cases which have followed those decisions.

It is in proof that the Morgans received from Kneeland the balance of the account of sales at the time they gave the letter of indemnity. The payment of the money and the engagement to defend the suit were evidently considered by the parties as an equivalent for the security obtained by the guaranty, and certainly upon the assumption that the suit was at the risk of the Morgans. Whether Kneeland had a right to retain the money is not a question here; if it were determined that he had no such right, it would not effect the consideration for the promise, for the consideration to be given was consequent upon the recognition of the sales, and of their liability in the suit; and, if the paper had said no more than to acknowledge this liability, Kneeland might have retired from the defence of the suit without reproach. But by receiving the indemnity or order, with its conditional provisions respecting the sums of money to be paid to him for costs, charges and counsel fees in the suit, he came under a moral, and, I think, a legal obligation to attend to the business of its defence in their behalf, and if it had been lost in consequence of his abandonment of it, he might have been held liable for the injury which had thereupon ensued—it would have been justly said, you have forfeited your implied engagement. The agreement is prospective in its operation as to the duties and responsibilities which, by fair and necessary inference, it imposes upon Kneeland, for it provides for the *damages* that may happen to be recovered against him; and not only so, but for *the costs, charges, and counsel fees* to *the counsel to*

*be by him employed in relation to the said business.*   The
services to be rendered after the date of the paper are consid-
erations distinct from the payment of the proceeds of the sale,
and form under the indemnity a new engagement.

The reciprocal engagements and liabilities which are plain-
ly expressed in or deducible from the agreement, and the re-
spective interests it involves, constitute a mutuality of interests
quite as distinct and satisfactory as the consideration itself.
The existence of mutuality necessarily grows out of the es-
tablishment of a consideration; they are the same conditions
of an agreement. *Pothier* says, *vol.* 1 *p.* 24, § 6, "In contracts
of mutual interest, the cause of the engagement by each of the
parties is the thing given or done, or engaged to be given or
done, or the hazard incurred by the other." And in 2 *Kent's
Comm.* 365, 1*st edition*, though the language is different, yet
the principle is the same; it is there said, " A valuable con-
sideration is one that is either a benefit to the party promising,
or some trouble or prejudice to the party to whom the promise
is made.   A mutual promise amounts to a sufficient consid-
eration, provided the mutual promises be concurrent in point
of time," &c.   Now here was a promise on one side to carry
on the suit, and on the other to pay the expenses.   The pay-
ment of the expenses by the Morgans was the inevitable con-
sequence of their being " of course liable for any damages
that may be recovered in the suit."   And the obligation on
the part of Kneeland to continue the defence of the suit re-
sulted from the condition by which he was bound to employ
counsel, and to do whatever else might be properly required
of him in its management.

But as it has been strenuously urged that the promise is
void for want of consideration, we must look at this point
more nearly.   The obvious intention of the Morgans was to
furnish an indemnity to Kneeland, against the risk he ran in
the suit, and the intention of the guaranty was to sustain the
sufficiency of the Morgans.   The language of the writings
will bear no other interpretation.   The hazard of the suit,
the expenses to be paid, or the labor to be done, would, either
of them, constitute a valuable consideration; and however
small the risk to be taken, or the labor to be performed, the

law has decided that it is immaterial. In support of these positons, I select from the mass of authorities the following, as exhibiting the principles upon which causes have been decided. The extent and adequacy of a consideration in relation to an engagement with which it is connected is allowed to be immaterial. 2 *Pothier*, 21. An implied contract is sufficient. 6 *East*, 307. If the intent of the parties be expressed it is sufficient. 3 *J. B. Moore's R.* 15, 19. It is not necessary to spell out the consideration ; it is sufficient to find it by fair inference. 19 *Com. Law R.* 272. In the case of *Thorp* v. *Thorp*, 12 *Mod. R.* 459, Holt, Ch. J., held, that the trouble of writing out a release to property to which the party had no title, at the request of another who knew the fact, would be a good consideration, and a good promise; and he said, that " where the doing a thing will be a good consideration, a promise to do that thing will be so too." See also *Morris* v. *Stacy*, 1 *Holt's Nisi Prius*, 153 ; *Stadt* v. *Lill.*, 9 *East*, 348. The law in relation to bargains, agreements and contracts, appears to be founded upon the common intention of the parties, and is uniformly made to seek and repose upon that intention, if it violate no obligation of private morality or public duty. Construed according to the incontrovertible rules and precedents of law, this order, or letter of indemnity, is not a *nudum pactum*. It is not an agreement all on one side, as in *Cooke* v. *Oxley*, 3 *Durn. & East*, 653, or a transaction in which no obligation was assumed by the party, as in *Atkinson* v. *Manks*, 1 *Cowen's R.* 708. On the contrary, Kneeland was bound, not as a party to the suit, for from that predicament he had been released, but on account of the Morgans, to continue the defence and make the necessary payments ; and to enable him to accomplish this, without loss or detriment, the order upon Messrs. Rogers expressly provides, that they shall advance him from time to time, at his election, such sums as may be necessary to pay costs, charges and counsel fees. The consideration, then, was not wholly past and executed ; the suit was not terminated ; there were responsibilities to be incurred, and services to be rendered.

As the consideration appears on the face of the contract, independently of the payment of the money, it is not necessary

ALBANY,
Dec. 1834.

Rogers
v.
Kneeland.

to examine the point whether Kneeland had a lien on the balance of the proceeds which he paid over to the Morgans.

But it is objected that the judge erred in rejecting the offer to prove that the cotton was sold by sample, contrary to orders. From the record it appears that this testimony was shut out because the Morgans had received the proceeds of the sale. In a case in which the receipt of the proceeds had been involuntary, and accompanied with even a slight degree of imposition, I should consider the objection fatal; but the letter of indemnity being before the court, and the voluntary receipt of the proceeds not disputed, I think the judge was right in excluding the testimony. But suppose the proof had been admitted, it would not, in my opinion, have helped the case of the defendants in the court below; for I should view it in this light: Among merchants the receipt of the account of sales, and the subsequent voluntary and unqualified receipt of the proceeds is considered an acquiescence in the price of the goods, and the conditions of sale, in cases where orders have been departed from. The point here is somewhat different, and goes a step further, being a warranty as to the quality of the merchandize, contrary to orders. As a common sense question, I think the indemnity is in justice and reason sufficient to cure the error; and I have found no principle of law or morality, in my study of this case, to countervail that conclusion. In the absence of all proof against Mr. Kneeland of unfairness or concealment, and with the letter of indemnity in his hand, was he bound to prove *affirmatively* that the Morgans had knowledge of a violation of their orders? The cases cited to support this proposition are not to the purpose. *Trimble* v. *Thorn*, 16 *Johns. R.* 153 and *Miller* v. *Hackley*, 5 *id.* 375, arise—the one upon a protested note, the other upon an inland bill. There the notice of protest is a legal prerequisite to hold the endorsers. The waiver of the notice must be proved, to fix the endorser upon a subsequent promise to pay. It was a loose, verbal promise in the one case, and a verbal admission of liability in the other, and to third parties. There was no written paper, with attendant circumstances, from which it might be inferred that the parties had received all the information they desired, or had done an act to preclude

such a plea. They are not the cases of a writing stating the existence of a suit arising out of a sale made for their account, and adopting the suit not merely by a direct assumption of it, but by providing for the expenses of its continuance. If, upon the permission given by the court, it had been proved, that concealment or any kind of fraud had been practiced by the plaintiff, my views of the case would have been the very opposite of what they are now; but such proof was not even attempted. It is impossible for me to conceive that men possessing ordinary business habits and intelligence could commit themselves in writing, in the manner and to the extent that the Morgans have done, without having first acquired a thorough knowledge of the ground and cause of the suit. They surely must have ascertained whether it arose from the defect in the merchandise, the existence of which they knew beforehand, and the consequence of which they wished to avoid, or out of a mistake committed by their agent, or from both causes enjoined; and if they did not take the pains to satisfy their minds in this particular, considering the sources of information open to their investigation, the censure must lie on their own heads. I have therefore no doubt of the absolute fairness of presuming and declaring a knowledge of the warranty by the Morgans.

My opinion is that the judgment of the supreme court ought to be affirmed.

And such being the *unanimous opinion* of the Court, the judgment below was accordingly *affirmed.*