Seeley
*v.*
North.

## SEELEY and another *against* NORTH :

### IN ERROR.

*B*, being the holder of a bill of exchange drawn and indorsed by *A*, indorsed it himself, after which *C* indorsed it, for *B's* accommodation, and *B* got it discounted. On its arriving at maturity, it was dishonoured, and *C* took it up, paying the full amount; and shortly afterwards, *B* reimbursed to *C* what he had so paid; and *C* no longer had, or claimed to have, any interest in the bill. It afterwards remained in *C's* hands about a year and a half, when *B* took it from *C*, and employed *D*, a counsellor at law in *New-York*, to bring a suit upon it, in *C's* name, against *A*, before the superior court of that city. More than a year after the commencement of the suit, *D* finding it necessary to call *B* as a witness to prove notice of protest to *A*, wrote to *C* in this state, and after mentioning the suit, the parties and the court, proceeded thus: "It may be necessary to have *B* as a witness. Without him, I shall hardly be able to prove notice of protest of non-payment. In order to qualify him as a witness, it will be necessary for you to release him; and for that purpose, I send, on the other side, a release to be executed by you. If you find it satisfactory, please date and subscribe it, and return it to me." *C*, on the receipt of the letter, executed the release, and returned it to *D*, in a blank envelope. *D* produced the release in court; *B* was admitted as a witness, and proved the notice; and the plaintiff had a recovery. *C* never authorized *B* to commence a suit on the bill, or to employ counsel for him; and never had any other communication with *D* in relation to such suit than the one above stated. *D*, understanding that the suit was for *C's* benefit, made the charges for his services therein to *C*. In an action of book debt, brought by *D* against *C*, to recover such charges, it was held, that the defendant, under these circumstances, was not liable.

*Qu.* Whether the only question in such case, be not one of *fact, viz.* whether *C*, in point of fact, ratified the conduct of *B*, in prosecuting the suit against *A* in *C's* name, and in employing *D* as counsel for this purpose.

THIS was an action of book debt, brought by *Ebenezer Seeley* and *Samuel Glover*, Esqrs., to recover the fees and charges for their services and expenses, as counsellors and attorneys at law, in a certain suit instituted and conducted to final judgment, by them, in the superior court of the city of *New-York*, in which suit the present defendant was plaintiff, and one *Thomas Smith* was defendant. At the term of the superior court in *January*, 1843, *Francis Parsons*, Esq. was appointed auditor, to adjust the accounts of the parties. After a hearing before him, he found and reported, that the defendant owed the plaintiffs nothing by book, as claimed by them. On a remonstrance to the acceptance of this report, the following facts appeared, and were found by the court.

The suit instituted and conducted by the plaintiffs, was an action of *assumpsit* on a bill of exchange, drawn by *Thomas Smith* on *Hiram Allen,* payable to the order of *Smith,* accepted by *Allen,* and indorsed, first by *Smith,* then by *Oliver R. Burnham,* and subsequently by *North,* the present defendant, for the accommodation of *Burnham.* The bill was discounted for the benefit of *Burnham;* and, on its arriving at maturity, was protested, by the holders, for non-payment. It was afterwards paid and taken up, by the defendant, *North;* and shortly afterwards, *Burnham,* for whose accommodation he had indorsed it, repaid to him the full amount which he had so paid; and ever thereafter the defendant ceased to have, or to claim, any interest whatever in the bill. He never authorized *Burnham* to institute any suit in his name, or to employ counsel at his expense.

After the bill had been paid, by the defendant, *North,* as above stated, it remained for about one year and a half in his possession, when *Burnham* procured it from him, for the purpose of its being put in suit against *Smith.* Shortly afterwards, *Burnham* took it to the plaintiffs, and instructed them to commence a suit on it against *Smith,* in the name of the defendant, *North;* which they accordingly did.

After instituting the suit, the plaintiffs endeavoured to obtain the requisite evidence to prove notice to *Smith* of the protest of the bill. Although they made diligent enquiry, they were unable to find such evidence; and were, on that account, obliged from time to time to procure continuances of the cause. More than a year had elapsed from the commencement of the suit, and still the evidence had not been obtained. *Burnham* was apprised of the difficulty in regard to the proof of notice of protest, for several months, before he gave any intimation to the plaintiffs, that he had any knowledge of the subject; when at length, he informed Mr. *Seeley,* that he himself was the person who gave the notice of protest to *Smith.* *Burnham* being prior indorser on the bill, and apparently liable to *North* as such, and therefore incompetent as a witness, Mr. *Seeley* wrote and sent the following letter to *North:*

" *New-York, Nov.* 17, 1840.

Mr. *Alvin North,*

Sir,—In the suit pending in the superior court of this city, in your favour, against *Thomas Smith,* (which, I believe,

*Hartford,*
*June, 1844.*

Seeley
*v.*
North.

has been chiefly under the direction of Mr. *Oliver R. Burnham,*) it may be necessary to have Mr. *Burnham* as a witness. Without him, I shall hardly be able to prove notice of protest for non-payment. In order to qualify him as a witness, it will be necessary for you to release him. And for that purpose, I send, on the other side, a release, to be executed by you. If you find it satisfactory, please date and subscribe it, and return it to me. It does not need an attesting witness, and I would prefer it should have none.

Very respectfully, your ob't servant,

*E. Seeley.*"

On receiving this letter, *North* executed the release enclosed therein, and returned it to Mr. *Seeley*, in a blank envelope, pursuant to his request. This was all that was ever done by *North* in relation to said suit : nor had he any other communication with the plaintiffs, or either of them, during its pendency.

Soon after the release was returned to Mr. *Seeley*, the cause against *Smith* came to trial ; *Burnham* was produced as a witness ; the release was handed to him in court ; he was sworn and testified, that he had no interest in the cause, and that he gave notice of protest to *Smith ;* and on this testimony the jury found a verdict in favour of *North.*

There was no evidence before the auditor, that the plaintiffs had any intimation, during the progress of said suit, that *North* was not interested in the bill of exchange ; nor was there any evidence that the plaintiffs acted on the credit of *Burnham,* or looked to him for their fees. They understood that said suit was for *North's* benefit ; and all their charges were made to him, and none to *Burnham. North* did not disavow to the plaintiffs, until long after the termination of said suit, the authority and agency of *Burnham* in directing said suit, or his own interest therein. But he was guilty of no other concealment than what is implied in the facts above stated.

The court accepted the auditor's report, and rendered judgment for the defendant to recover his costs. The plaintiffs thereupon filed their motion in error, and brought the record before this court for revision.

*Hungerford* and *Fellowes,* for the plaintiffs, contended, 1. That the ratification of an agent's acts by his principal, is

equivalent to an express antecedent authority. *Sto. Ag.* 234. 254. 453. 471. 3 *Mass. R.* 70. 12 *Mass. R.* 64. *Shaw* v. *Nudd,* 8 *Pick.* 8.

2. That the facts being ascertained, whether they amount to a ratification or not, is a question of law. The case stands before the court as it would, if the facts had been detailed in the auditor's report, or found by a special verdict of a jury, or by the report of a committee in chancery. In all these cases, the legal inference from the facts, is to be drawn by the court.

3. That the acts of *North,* on the state of facts found in this case, amounted to a ratification of *Burnham's* authority. Here all the elements essential to a ratification exist. In the first place, *North* had full knowledge of the pendency of the suit against *Smith ;* that it was in his, *North's* favour ; that it was on a particular bill of exchange, with which he was well acquainted ; that it was instituted through *Burnham's* agency ; that the plaintiffs were conducting the suit as attorneys ; and that they understood him, *North,* to be the party in interest. The letter of *Seeley* and the release enclosed, taken together, gave him full information of all the material facts. Secondly, *North* remained silent, and did not disavow *Burnham's* authority, nor his own interest in the suit. 2 *Kent's Com.* 614. 616. *Sto. Ag.* 82, 3. *Cameron* v. *Baker,* 1 *Car. & P.* 268. (11 *E. C. L.* 388.) *Cairnes* v. *Bleecker,* 12 *Johns. R.* 300. 306. Thirdly, there was a direct act of positive acquiescence on the part of *North,* by *executing* and *returning* the release. Fourthly, nothing existed in the case impairing the effect of these facts. The plaintiffs are innocent. They acted on *North's* credit solely ; and his conduct induced them to continue so to act. It must be admitted, that if *North* had been really interested in the bill of exchange, he would have been liable. But this can make no difference on the question of *ratification.*

4. That the release, if not a ratification of *Burnham's* acts, amounted to a contract, on the part of *North,* to employ the plaintiffs thereafter to conduct the suit for his benefit. It was equivalent to a *request* to them so to conduct it.

*T. C. Perkins* and *R. H. Mills,* for the defendant, were stopped by the court.

Hartford,
June, 1844.
—————
Seeley
v.
North.

CHURCH, J.   The court has found, that *North*, the defendant, had no interest in the bill of exchange, in the prosecution of which the costs and charges of the plaintiffs arose, which they now attempt to recover ; that he never authorized *Burnham* to commence a suit upon it against *Smith ;* nor to employ any counsel for him, or at his expense.   And it is also either found or admitted, that the defendant never did employ the plaintiffs as his attorneys ; nor did he have any communication with them, only as he executed and returned to them, at their request, the release set forth in the remonstrance.

The plaintiffs may have supposed, and probably did, that *North* was the real plaintiff in the suit prosecuted against *Smith* upon the bill of exchange, as well in interest as in name.   They may have given credit entirely to him, supposing *Burnham* was his agent.   *Burnham* probably concealed from the plaintiffs, as he did from *North*, the truth of the case. And yet all these circumstances do not conduce to prove any contract on the part of *North*, express or implied, so long as it is conceded, that he never employed the plaintiffs, nor authorized *Burnham* to do so, and had no interest in the subject matter of the suit against *Smith*.

The plaintiffs rely very much upon the circumstance, that the defendant, *North*, executed the discharge before referred to, and thus qualified *Burnham* to become a witness in the action against *Smith*.   They suppose this, in legal effect, was an act of ratification, on the part of the defendant, of the unauthorized retainer of the plaintiffs as attorneys and counselors, by *Burnham*.

Mr. *Seeley's* letter, for the first time, informed the defendant, that the suit was pending in *New-York*, and requested his interference, so that *Burnham* could testify on the trial ; but it did not inform him, that the plaintiffs were conducting the suit on his behalf, or at his expense, or on his credit.   It alluded to *Burnham* in connexion with the action, but not as agent of this defendant.   Nothing contained in that letter could lead *North* to suspect, that *Burnham* had done any thing to commit him as responsible to the plaintiffs as his attorneys—nothing which ought to put him on enquiry, or induce him to speak on the subject.   While he was informed, that a suit was pending in his name, he knew, at the same

*Hartford,*
June, 1844.

Seeley
*v.*
North.

time, that he had no interest in it, and that he had done no act subjecting himself to any demands on account of it. *Burnham* had repaid to *North* the money advanced by him, and had resumed the bill of exchange as his own—as the indorsee of *Smith.* How could *North*, after this, suppose himself at all connected with the suit for the recovery of the money from *Smith?* *North* resided in this state ; the suit was pending in the state of *New-York*, and subject to the legal formalities there required ; and if he knew, that the action was prosecuted in his name, he must have supposed this was done for some good reason known to the plaintiffs as professional gentlemen, and about which he need not inquire. He might very well have supposed it was but the common case of a suit brought by the assignee of a *chose in action*, in the name of the assignor. Nothing in Mr. *Seeley's* letter gave an intimation that the plaintiffs were acting as the attorneys of *North ;* and this is the controuling feature of the case.

A ratification of an unauthorized act of an agent, without full knowledge of all the circumstances connected with such act, cannot be presumed, and will not bind the principal. And such knowledge is a most important qualification of the doctrine of presumed ratification, and indispensable to its legal, as well as equitable, operation,—especially, when no third person has been misled or injured. *Owings* v. *Hull*, 9 *Peters*, 608. *Rogers* v. *Kneeland*, 13 *Wend.* 114. *Story on Agency*, § 243.

It is claimed here, unless it be presumed that *North* intended to adopt the suit against *Smith* as his own, with the expenses of its prosecution, when he executed the release, that he must be considered as practising a fraud upon the court, by that act. We make no such inference. The release was sent by Mr. *Seeley* to *North*, to be signed and returned. The purpose for which it was wanted, was not an unusual, but a very common one ; and when suggested by respectable counsel as being necessary, the act of the defendant complying with the request, cannot be condemned as improper. Besides, as *Burnham* had paid to him the full amount of the money he had advanced to take up the bill of exchange, why should he object to releasing *Burnham* from all claims upon him on that account, without adverting to the

costs of the action, with which he supposed he had no concern ?

We concur in opinion with the superior court, that the plaintiffs, upon the facts found, are not entitled to recover, whether the questions submitted to us, be of law or of fact. We doubt whether any question of law is involved in this case ; but rather believe, that the only question is, whether in *point of fact, North* ratified the act of *Burnham,* in prosecuting the action in his name against *Smith,* and in employing the plaintiffs as counsel for this purpose. The most the plaintiffs can make of it, is, that by executing the release, the defendant intended to recognize, and did in fact recognize, the plaintiffs as his attorneys. It is a question of *intention.* And where the nature and effect of an act depends upon the intention with which it is done, such intention must be found by the jury, and not presumed by the court; as if it be proved that a person destroyed his will, it is for the jury to say, whether he thereby intended to revoke it. *Harwood* v. *Goodright, Cowp.* 87. *Poivis* v. *Smith,* 5 *B. & A.* 850. (7 *E. C. L.* 279.)

We think there is nothing erroneous in the judgment of the superior court.

In this opinion the other Judges concurred.

Judgment affirmed.