## Bristol and Kelsey *vs.* Tracy.

In an action to recover the price of hot air furnaces, sold to the defendant, with a warranty that they should be capable of heating the building in which they were placed, to a temperature of 70 degrees at all times, the defense was that the furnaces failed to heat the building to the degree mentioned. *Held* that it was improper to ask a doctor of medicine the question, "Is there a degree of heat, regarded among physiologists as a proper temperature for inhabited dwellings in the winter?" the proper question being whether the furnaces were of sufficient capacity to heat the rooms to the degree provided in the contract.

It was a part of the agreement for the sale of the furnaces to the defendant, that the plaintiffs should put in a cold air register face, in the base of the building. This they omitted to do. But, it appearing that the furnaces were delivered and put up, within the time specified; that they were received and used by the defendant for more than three months, without any complaint being made, on account of the omission; and there was no evidence tending to show that the omission was any damage to the defendant, or that she had ever requested to have the register face put in; *it was held* that this amounted to a waiver, by the defendant, of her right to treat the omission as a forfeiture of the plaintiff's claim to payment for the furnaces, and a waiver of the right to insist upon the work being done, as a condition precedent to the plaintiff's right to demand payment.

Where the plaintiffs, in December, 1853, sold two hot air furnaces to the defendant, with a warranty extending to the 1st of April, 1854, when the defendant was to pay for the furnaces; *Held*, that the fact of the plaintiffs' making improvements on the furnaces after they were put up, did not operate to extend the warranty, or the credit, beyond the 1st day of April.

The contract for the sale of such furnaces to the defendant provided that, in case the furnaces should fail to heat the building, they were to be taken away by the plaintiffs, at their own expense, on the demand of the defendant. *Held*, that here was a means agreed upon, between the parties, by which the defendant, in a certain event, should be at liberty to rescind the contract; and the contingency upon which the right to rescind should depend, as well as the act by which the right to rescind should be determined, were also specified; and that, consequently, the defendant had no right to retain the possession and use of the property during the continuance of the term of credit and warranty, without making her election to rescind; and that she could not do so without becoming liable to pay the value of the property.

THIS was an appeal, by the plaintiffs, from a judgment entered in favor of the defendant, upon the report of referees. the facts are sufficiently stated in the opinion of the court.

Bristol v. Tracy.

*Selah Mathews*, for the plaintiffs.

*E. A. Raymond*, for the defendant.

*By the Court*, Welles, J. This action was brought to recover the price of two hot air furnaces put, by the plaintiffs, into the female seminary conducted by the defendant, in the city of Rochester, together with a small amount for labor and materials, in addition to the furnaces. The cause was tried before three referees, who reported in favor of the defendant. It appeared on the trial, that on the 26th day of December, 1853, the plaintiffs and the defendant entered into a written contract, by which the plaintiffs agreed to sell and deliver to the defendant, at the building of the Tracy Female Institute, in said city, two of Chilson's furnaces, being Nos. 3 and 4, and to put up the same, with the air chambers connected at the top, using the furnace, appurtenances and fixtures already in said building; also, to supply all the materials, and mason-work necessary to put up the same, for two hundred dollars. By the contract the plaintiffs were to put in a cold air register face in the base of the recitation room, when they put in the furnaces. The contract provided for the doing of other work, and furnishing other materials connected with the furnaces and the building, for which the defendant was to pay the plaintiffs. By the same contract the plaintiffs warranted that the furnaces should be capable of heating all the rooms and wall of the building except the recitation room and front chamber, in the second story of the building, and private hall, to a temperature of seventy degrees, at all times, with good care and usage; which warranty was to continue in force until the 1st of April thereafter. The whole work to be completed by the evening of the 31st day of December, then instant. There was another provision, to the effect that if the furnaces failed to heat the building, they were to be taken away by the plaintiffs, at their expense, on the demand of the defendant. There were other provisions in the contract not deemed necessary to be here stated.

It appeared in evidence that the plaintiffs put up the fur-

naces in the building mentioned, within the time provided in the contract for that purpose, and furnished other materials and labor, amounting to $21.93, in and about the same, and not included in that for which, by the contract, they were to be paid the $200.  Evidence was given, tending to show that the furnaces were capable of heating the rooms and walls in the building, with the exceptions mentioned in the contract, to a temperature of seventy degrees, at all times, with good care and usage.  Evidence was also given, from which it was contended that the furnaces were not so capable.  On this subject the referees report, as matter of fact, that the furnaces had not a capacity to heat the building to seventy degrees at all times between the 1st of January and 1st of April, 1853, as provided in the contract.  The evidence in support of this conclusion, consisted of the testimony of witnesses, that at different times during the winter the rooms were uncomfortably cold, and that complaints were made from time to time by the teachers and pupils on that account.  No witness testified that at any time the temperature, in any of the rooms to which the warranty applied, when the furnaces were in use and heated, was below seventy degrees.  Chester Dewey, a witness for the defendant, who had testified that he was of the degree of doctor of medicine, was asked the following question: "Is there a degree of heat regarded among physiologists as a proper temperature for inhabited dwellings in the winter?"  The question was objected to by the plaintiffs' counsel, as improper.  The referees decided that it should be answered, and the plaintiffs' counsel excepted.  The witness answered that there was, and that it was from 64 to 72 degrees.  In this, I think, the referees erred. The question was not what physiologists regarded a proper temperature for inhabited dwellings in the winter, nor whether these furnaces come up to their standard, but it was whether they were of sufficient capacity to heat the rooms to the degree *provided in the contract.*

There was no evidence given to show that the cold air register face was put in the base of the recitation room, as provided in the contract; and one ground upon which the referees reported

Bristol *v.* Tracy.

for the defendant was, that this omission amounted to a failure of a full performance by the plaintiffs, of the contract; and without which they were not entitled to recover. In this, it seems to me, the referees erred. Assuming it to have been the duty of the plaintiffs to put in this register face, and to provide the necessary materials therefor, it nevertheless appears that the furnaces were delivered and put up by the plaintiffs by the time they agreed to put them up, and that they were received and used by the defendant from that time to the commencement of the action. During all this time—over three months—no complaint was made on account of the omission to put in the register face, and there was no evidence tending to show that the omission was any damage to the defendant, or that she had ever requested to have the register face put in, although there was complaint as to the workings of the furnaces, in relation to their capacity to produce the required amount of heat. Upon this point there is no contrariety of evidence, and I think the court are bound to adjudge, in view of the evidence and of the course of the trial, that there was a waiver on the part of the defendant, of her right to regard this trifling omission as a forfeiture of the plaintiffs' right to demand payment for the principal part of the labor and materials, or to insist upon its being done, as a condition precedent to their right to demand payment for the furnaces. In order to entitle the defendant to do this, it should at least appear that some damage or inconvenience had resulted to her from the omission, or that she had on that account refused to accept the performance as proved; especially after so long an acquiescence in the omission.

There is still, in my judgment, another important aspect of the case in which the referees have taken an erroneous view of the rights and liabilities of the parties. Assuming it to be correct, as the referees hold, that by a proper construction of the contract the defendant was not bound to pay for the furnaces before the 1st day of April, 1854, when the warranty expired, I think they were wrong in holding that the fact of the plaintiffs' making improvements on the furnaces after the

---

Bristol *v.* Tracy.

---

1st of January, operated to extend the warranty or the credit beyond the 1st day of April.

There is still another consideration, which the referees seem to have overlooked, which has an important bearing on the case. The contract provides, as before stated, that in case the furnaces failed to heat the building they were to be taken away by the plaintiffs, at their own expense, on the demand of the defendant. Here then was a means agreed upon between the parties, by which the defendant, in a certain event, should be at liberty to rescind the contract; and the contingency upon which such right to rescind should depend, as well as the act by which the defendant's election to rescind should be determined, were also specified. It seems to me that it cannot with propriety or justice be now said, that the defendant had the right to retain the possession and use of the property until after the time had expired during which the warranty was to continue, without determining her election to rescind in the way agreed upon, without becoming liable to pay what the property was worth. If it was not as warranted, and therefore worth less than the contract price, I see no difficulty in the referees' making a proper deduction therefrom, by way of recoupment. No question seems to have arisen, at the trial, in relation to the pleadings of the respective parties, and if any should arise, on a future trial, it would be competent, if necessary, for the referees to adjourn the hearing, in order to give either party an opportunity to apply to the court for an amendment.

Upon the whole, I think the report should be set aside, and a new trial awarded, with costs to abide the event.

[MONROE GENERAL TERM, September 3, 1855. *Johnson, T. R. Strong* and *Welles,* Justices.]