Bosworth, Ch. J.
The defendant insists “ that hy the terms of the contract, the plaintiff was hound to carry out to Hew Orleans 700 tons measurement of assorted cargo; that the defendant was prepared to load the vessel, to that extent, hut that when she was loaded with 361 tons of such cargo, the plaintiff, against the demand of the defendant to he állowed to load her to the extent agreed upon, refused to receive on board the vessel any greater amount than 361 tons, and the vessel thereupon embarked on her voyage to Hew Orleans- with that amount, and no more.”
“ That the contract is entire, and if the foregoing interpretation of its meaning he correct, then the plaintiff has not proved performance hy him of the conditions precedent, and can not therefore recover.”
The defect in the defendant’s case is that it does not appear that the steamer could not carry “ seven hundred tons measurement of assorted cargo,” without drawing over fourteen feet of water. The admission at the trial is cautious and guarded, and seems to have been drawn in the form agreed upon, with a view to exclude the idea that the 361.95 tons laden on board was “ assorted cargo ” within the meaning of the clause in the charter party, the construction of which is now in question. That clause seems to contemplate by the “ assorted cargo ” of • which it speaks, such cargo as usually pays freight according to its measurement tonnage, and not upon its weight.
The admission seems to favor this view; for while it is admitted that the defendant was “ prepared to load the steamer ■with 700 tons measurement of assorted cargo,” it is further admitted that, “ when she was loaded to the extent of 361.95 tons, with the goods contained in schedule No. 1, the plaintiff refused to carry more, on' the ground that she drew full fourteen feet of water,” and' that the vessel with such cargo did, in fact, draw full fourteen feet of water. It is carefully ex- *291 eluded from the admission that this cargo was an “ assorted cargo.”
It does not appear that the defendant 'then complained that the ground taken by the plaintiff was inconsistent with his duty, or the defendant’s rights, under the charter party.
The exhibit, in its description of the tonnage of the cargo, specifies forty-four tons by weight, and 91-g- tons by measurement:, and as to the residue makes no mention how "its number of tons was ascertained, unless it is to be inferred from the figures, “225, 34rA0.”
It is admitted that the tonnage of the steamer was, as stated in the complaint, viz: “ that the measurement of said steamer was more than a thousand tons.” It is quite obvious that lead and iron might make the steamer draw fourteen feet of water, when consisting of less than 300 tons measurement, while 700 tons of goods, known as “ assorted cargo,” might not make her draw fourteen feet of water.
The plaintiff, certainly, does not contract that the steamer can cany 700 tons measurement of every kind of cargo. His contract, if there be any, as to the number of tons the steamer could carry, is that she can carry 700 tons measurement of “ assorted cargo.”
The court, so far as I am advised, is not presumed to know, judicially, that the cargo “ contained in schedule No. 1,” is such as is commonly known, in the carrying trade,' as an “ assorted cargo.” Until that fact is proved or admitted, the defendant has not in his case the facts necessary to raise the question, which, in his behalf, is now pressed on the consideration of the court.
The allegation in his answer is, that the 361 tons consisted of “ an assorted cargo.” This he has failed to prove. The written admission, on which the trial was had, did not state that it was “assorted cargo but on the contrary, seems to imply, in connection with the schedule No. 1, forming part of the admission, that it was not cargo ,of that description.
There is no complaint that the steamer, on the return from *292 New Orleans to New York, did not bring back “six hundred hogsheads of sugar, or its equivalent.”
It does not, indeed, appear that she brought back any cargo. But the fact remains that, no complaint is made, or defense •attempted, on any failure or incapacity of the steamer to bring back all that, under any construction of the charter party, it can be insisted that. the plaintiff covenanted she should or could bring back.
The only defense is, that that the cargo actually laden on board at Hew York, being 361.95 tons by weight and measurement, made the steamer draw fourteen feet of water ; and on that' ground the plaintiff refused to receive more cargo on board, to which act the defendant does not appear to have made any objection, or taken any exception at the time.
For the reasons already stated, I think the defendant has not shown that the vessel could not carry seven hundred tons measurement of “ assorted cargo and that the just inference, from the pleadings and the admissions at the trial, is, that the 361 tons laden at Hew York was not an “assorted cargo,” according to the parties’ understanding of those words, as used in the charter party.
I think, therefore, that the motion for a new trial should be denied, and that the plaintiff should have judgment on the verdict.
But even if it be assumed or conceded that the cargo contained in schedule Ho. 1, was an “assorted cargo,” I think that the plaintiff is, nevertheless, entitled to recover.
The concluding clause of the provision in question is, that it is understood that the steamer is “ to bring back six hundred hogshead of sugar, or its equivalent, or more, in case her draft of water does not exceed fourteen feet.” It is quite clear that, whether she was to bring back full six hundred hogsheads of sugar, was made dependent on the fact whether she would be made, thereby, to draw over fourteen feet. That she should not be made, thereby, to draw over fourteen feet, is as much a condition to her being required to bring back *293 six hundred hogsheads of sugar, as to bring back “its equivalent,” or to bring back more.
The tonnage of the vessel was such as to admit of her containing seven hundred tons of measurement goods; but to what extent her draft should be affected by the cargo put on board, seems to be a point in regard to which the plaintiff desired to protect himself and his vessel.
' He seems willing' that she might be so laden as to draw fourteen feet of water, but no more. The words, “or its equivalent,” are not of very obvious import, in the place they occupy. They can not mean equivalent in tulle, without reference to the specific gravity of the equivalent cargo. The number of hogsheads of sugar she was to bring back had no limit, except their effect on the draft of the vessel. And that was not to exceed fourteen feet, whether that result was produced by five "hundred and fifty or seven hundred, or the equivalent of either. I think the words, “ its equivalent,” as used, mean any thing else of like weight; and that was qualified by the condition as to the draft of water.
Hence, the. condition with which the clause in question concludes, expressed by the words, “in case her draft of water does not exceed fourteen feet,” applies with equal force and absoluteness to the words, “six hundred hogsheads of sugar,” as to the words, “ or its equivalent,” and to the words, “ or more.”
The obviousness of this meaning will aid in' construing the first clause of the same article, where its true meaning might be otherwise doubtful.
It all tends to show that the words, “ if that does not make her draw over fourteen feet of water,” apply to the understanding expressed “that the steamer is to carry out to New Orleans seven hundred tons measurement of assorted cargo ;” and that the words, uif that,” after the words “or more,” do not relate solely to, or solely qualify the words “ or more.”
There is no pretense that the steamer had not' sufficient capacity to carry seven hundred tons measurement of cargo. There can be no pretense that various kinds of cargo, of that *294 number of tons measurement, would not make her or any vessel draw fourteen feet of water. It is clear that three hundred and sixty-one tons of described cargo made her draw full fourteen feet. If every ship’s cargo, consisting of different articles, can be properly called an “ assorted cargo,” then I think it absurd to hold that the plaintiff covenanted to carry seven hundred tons measurement of any kind of cargo consisting of different articles, no matter what might be its specific gravity.
And if this be so, then I think it logically follows that the defendant has no defense, as he has not proved that the cargo he put on board was “ an assorted cargo,” as known in the carrying trade, or in the trade generally ; and that the fair construction of the contract, in the light of the facts before us, is that the vessel was to be so laden as not to draw over fourteen feet of water.
I, therefore, think that the plaintiff is entitled to judgment on the verdict.
Robertson, J.
Before considering the clause in controversy in this case, it may be necessary to take note of one or two other parts of the charter party. The capacity of the steamer chartered is not specified in the charter party, but is left blank. After the second stipiilation of the defendant therein, it is provided that he may have the use of the cabin for passengers, and also carry, if desired, steerage passengers between decks. In the second stipulation of the plaintiff, the necessary room for the accommodation of the crew and stowage of sails, cables and provisions, is excepted from the part of the vessel hired. Of course, the part occupied by the engine, machinery and appurtenances and necessary passage ways and accommodations, must also be exempt from occupation, with a cargo, by the charterer. All these exceptions would, of course, considerably reduce the carrying capacity of the vessel, and it would seem to be necessary and proper that this should be fixed in the agreement. Here dimensions alone would not be sufficient, as cargoes of different weight with the same dimensions, might *295 make the vessel unmanageable, or even submerge her altogether. The proper standard would be one composed of a restriction of both excessive dimensions and weight. It would not follow, therefore, that the carrying capacity of a steamer of a thousand, tons, by being stipulated for at seven hundred tons measurement, was so reduced, merely for the purpose of defining the proper burden of the boat. Hence it is necessary to examine the terms of the clause in question to ascertain whether its object was to establish such a standard, merely, or to accomplish something further. Of course whatever may be implied from a contract is in law in it, (Rogers v. Kneeland, 13 Wend. 114, S. C. 10 id. 218,) and full effect must be given to all its parts.) (Westcott v. Thompson, 18 N. Y. Rep. 363. Ward v. Whitney, 4 Seld. 442.) In a charter party, eminently, its. intent is to govern its construction. (Weisser v. Maitland, 3 Sandf. 318.)
The object of the clause under consideration could not have been simply to guaranty that the vessel would- carry seven hundred cubic tons of any assorted cargo the defendant chose to put on board ; because its second branch expressly provides that the amount of return cargo specified, and any thing beyond it, is only to be brought back “ in case her draft of water does not exceed fourteen feet.” It could hardly be supposed that the owner meant, in the same clause, to permit a fixed quantity of out,ward cargo of indefinite weight, to be carried without reference to the draft of water, while the vessel was to carry no more if the draft of water produced thereby exceeded a certain depth, and yet refuse to bring back a return cargo whose weight would sink the vessel beyond that depth. The simpler and more valuable form of such a guaranty would have been that the vessel could carry a certain quantity of cargo, of whatever the charterer might make it up, and without regard to the draft of water produced by it. Physical laws would also probably forbid the loading of vessels of a thousand tons capacity only, with a cargo of goods composed of - iron or lead, occupying seven hundred cubic feet, without rendering her useless, if not sinking her.-
*296 The argument that the plaintiff could not have intended to have agreed to confine himself to a cargo of three hundred and sixty-five tons in a vessel of the capacity of one thousand, has but little weight when we consider that he could select his own cafgb, and thus determine its weight. Só also the inference that'the defendant did not intend to .reserve the power to limit the plaintiff, to the use of a littlé over half the stipulated capacity or dimensions, is unwarrantable, if the only object was "to express the utmost limit of the dimensions of the cargo of however light matérials composed. It was as much for the defendant’s interest to do that, while the space to be occupied by cargo was undetermined by the rest of the' contract, as it was for the plaintiffs to specify the depth of water, which was to control the weight of such cargo.- If fourteen feet was the ptoper draft "of water, as appears by the second branch of such clause, it would have been worse than idle for the plaintiff to have stipulated 'that seven hundred tons measurement of any ■kind'of'cargo"'might' be put on" board, when one of half the dimensions brought her down to that depth. It is true, there is’hb extrinsic evidence of the proper depth of the draft of water, but such a stipulation is, at least, strong evidence of the understanding of the parties.
■It wasipressed'upon us on the argument that grammatical construction required the contingency of the depth of the vessel’s.draft of water to- be .applicable only to the excess of the: cargo beyond the prescribed dimensions, and not to its merely reaching, it. If that were so, it would equally be a co'veüant to carry more than a thousand tons provided it did not depress- the vessel below the fourteen feet, so as to occupy, even the cabins, the engine-roóm, and every particle of space on board'; ánd it .would still leave the question of what, within the meaning of such clause, was an assorted cargo, undetermined, . But no' invincible rule of grammar confines such contingency tó the last of the two preceding alternatives, to' wit, the excess beyond the fixed quantity. The word “ that'” used in the expression of such contingency, is not in that connection the relative, but the demonstrative pronoun, *297 and therefore has not necessarily a technical antecedent; when used in contrast with “ this,” it generally refers to the more remote object spoken of. To what it points is not to be determined by the arrangement of the words, but the sense. Had “ more ” (that is the excess) been intended to be referred to, the proper word would have been “ it,” and the disjunctive conjunction “ or,” creating an alternative, should have been changed to the copulative “ and.” So that it would have read “ seven hundred tons and more, if it does not,” &e. It is a common form of expression to say, “ I will walk a certain distance, or more if that does not fatigue me,” when the proper arrangement should be, as it is always understood, “ or, if that does not fatigue me more.” Such must necessarily be the construction of any sentence containing two alternatives, the first fixed, and the second including the first, but also something beyond it, where a subsequent contingency is the only means furnished for determining which alternative is applicable. The grammatical construction of such clause does not, therefore, necessarily interfere with its purpose as derived from the whole of the contract and its own terms, which was two fold —to limit the dimensions of the cargo to seven-tenths of the capacity of the vessel, and its weight to that which would depress it fourteen feet in the water.
But the defendant seems to have acquiesced in this construction. Knowing what the plaintiff claimed to be the construction of this clause, he not only permitted his goods to be carried in the vessel,, without objection, to the destined port, but received them there, and shipped on board again, at such port, and received at New York, another cargo according to the terms of the charter party. If his views be correct, the contract was entirej and the plaintiff could not recover for any thing done under the charter party if all was not done, (Smith v. Brady, 17 N. Y. Rep. 173 ; Cunningham v. Jones, 20 id. 486,) unless the part undone was waived, or the defendant estopped by accepting performance of the rest of the contract, knowing that it was done under a belief of the plaintiff that he had thereby performed the whole contract, and earned *298 the compensation. He availed himself actively of the plaintiff’s mistake (if it "was one,) to procure an advantage, (Dezell v. Odell, 3 Hill, 215,) and should he estopped. But he must also he held to have waived the prior non-performance of part of the contract (if there was any.) (Betts v. Perine, 14 Wend. 219. Bristol v. Tracy, 21 Barb. 236.)
Ho error was therefore committed in the direction to the jury. The exceptions must he overruled, the motion for a new trial denied, and the plaintiff permitted to enter judgment for the amount of the verdict.
Judgment accordingly.