HENRY L. GOODWIN. *vs.* THE TOWN OF EAST HARTFORD ET AL.

First Judicial District, Hartford, October Term, 1897. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

A town treasurer cannot bind the town by his acceptance of an illegal town order.

By Chap. 126 of the Public Acts of 1887, p. 746, the first selectmen of the five towns which were found to be specially benefited by the layout and establishment of a public highway across the Connecticut River at Hartford, and which were thereafter chargeable with its support, were constituted a board "for the care, maintenance and control of said highway," and for that purpose became "a body politic and corporate." *Held* that the expenses which this board could lawfully incur and impose upon the several towns were limited to those for the repair and maintenance of the highway; and that the towns were not liable for expenses incurred by the board for securing legislation whereby its own corporate existence was terminated and the burden of maintaining the highway was transferred to the State.

There can be no ratification of an unauthorized act, unless all the facts are known and an intent to ratify exists.

In the case at bar the plaintiff alleged that the defendant town and its treasurer intended to pay certain illegal orders drawn against the

Goodwin v. East Hartford et al.

latter by said highway board; and the answer averred that several annual reports of the selectmen, treasurer and other town officials, containing these orders as a liability of the town, were accepted by the town. *Held* that these allegations did not show a ratification by the town of the acts of the highway board.

A town is not estopped from setting up the illegality of an order drawn upon its town treasurer, merely because it has passed into the hands of a *bona fide* holder. Although such orders may be transferable by delivery or indorsement, they do not possess the full characteristics of commercial paper,—freedom from all legal and equitable defenses in the hands of a *bona fide* holder.

[Argued October 6th—decided November 30th, 1897.]

SUIT to enjoin the town of East Hartford and its treasurer from paying certain orders drawn upon the latter by the chairman of the highway and bridge commission, brought to the Superior Court in Hartford County and tried to the court, *Elmer, J.*, upon the plaintiff's demurrer to the defendants' answer; the court sustained the demurrer and, no further plea or answer being filed, rendered judgment for the plaintiff, and the defendants appealed for alleged errors in the rulings of the court. *No error.*

The amended complaint is as follows :—

"1. That he (the plaintiff) is, and for many years has been, an inhabitant and elector of said town of East Hartford, and is and for many years has been the owner of real and personal estate situated within the limits of said town of East Hartford, and is liable to the payment of such taxes as may be legally imposed upon his said property by said town of East Hartford, and has heretofore been assessed and taxed thereon by said town. 2. That the General Assembly of the State of Connecticut at its January Session, A. D. 1887, passed an Act, which was duly approved by the Governor of said State, May 19th, 1887, to establish free public highways across the Connecticut river in Hartford county, which Act provided for the assessment of the damages caused by the layout and establishment of such free highways, upon the several towns specially benefited by the layout and establishment of said highways, as benefits accruing to said several towns ; that the towns so assessed should, after the establishment of such free

public highways, maintain the same in proportion to the assessment upon said towns for the establishment of said highways; constituted the first selectmen of said towns so assessed a body politic and corporate by the name of ' The Board for the Care of Highways and Bridges across the Connecticut River in Hartford County,' for the purpose of caring for and maintaining and controlling said highways, and defined the powers and duties of said corporation. . . . 3. That the Act of the General Assembly mentioned in paragraph 2, provided that the said ' The Board for the Care of Highways and Bridges across the Connecticut River in Hartford County,' should appoint a chairman, secretary, and treasurer, and should apportion the expense of repairing and maintaining said free public highways, upon the several towns benefited by their layout and establishment, in proportion to the assessment against said towns for the damages caused by the layout and establishment of said free public highways, and that the chairman of said board should draw his order on the treasurers of the said towns payable to the order of the treasurer of said board, for the proportional amount payable by the said towns for such repairs and maintenance; and provided further that damages resulting from the defective condition of said free public highways or the bridges thereon, should be assessed in the same manner. 4. That pursuant to the provisions of the Act of the General Assembly, upon the complaint of the State's Attorney for Hartford county, the Superior Court for said county subsequently, to wit, at its October term, 1888, laid out and established a free public highway across the Connecticut river in Hartford county, in the limits of the towns of Hartford and East Hartford in said county, said free public highway being laid out where the . toll bridge of the Hartford Bridge Company across the Connecticut river then was, and along the causeways and approaches appurtenant to and connected therewith. 5. That the said Superior Court for Hartford county in its judgment or decree laying out and establishing said free public highway, assessed the expenses thereof upon the towns of Hartford, East Hartford, Glastonbury, South Windsor and Manchester,

having found said towns to be especially benefited by said layout; and the proportion of said expense imposed by said court upon the said town of East Hartford was eleven thirty-fifths of the entire expense; the sum of $67,000 being by said Superior Court assessed upon the town of East Hartford, and the entire expense being found by said court to be $210,000.   6. That by the provisions of said Act of the General Assembly providing for the layout and establishment of said free public highway, the said town of East Hartford became and was liable to pay in the manner prescribed by said Act, eleven thirty-fifths of the expense of repairing and maintaining said free public highway; and eleven thirty-fifths of any damage resulting from the defective condition of said free public highway or the bridges thereon, and for no other expense whatever.   7. That on the 23d day of September, A. D. 1889, the first selectmen of said towns of Hartford, East Hartford, Glastonbury, South Windsor, and Manchester, met pursuant to the provisions of the aforesaid Act of the General Assembly, and organized the corporation by said Act directed to be organized, by the name of ' The Board for the Care of Highways and Bridges across the Connecticut River in Hartford County;' and said corporation so organized immediately assumed the care and control of said free public highway, repairing and maintaining the same from that time until June 29th, 1893.   8. That on June 29th, 1893, George W. Fowler was, and for a long time prior thereto had been, first selectman of said town of Hartford, and a member of and chairman of the said ' The Board for the Care of Highways and Bridges across the Connecticut River in Hartford County,' and John S. Risley was, and for a long time prior thereto had been, first selectman of said town of Manchester, and a member of and the treasurer of the said corporation.   9. That pursuant to the provisions of the said Act of the General Assembly providing for the creation of said corporation and defining its powers, the chairman of the said corporation was empowered to draw his orders in favor of the treasurer of said corporation, upon the treasurer of the town of East Hartford, for eleven thirty-

fifths of the expense of repairing and maintaining said free public highway, and also for eleven thirty-fifths of any damages resulting from the defective condition of said free public highway, and for no other expenditure or purpose whatever. 10. That the State of Connecticut, by virtue of the provision of an Act of the General Assembly, at its January session, 1893, approved June 29th, 1893, and which Act, by force of another Act of said General Assembly, was made to take effect from its passage, assumed the duty of repairing and maintaining the said free public highway on said June 29th, 1893. 11. That the entire expense of repairing and maintaining the said free public highway from the 5th day of October, 1892, to the 29th day of June, 1893, including all damages resulting from the defective condition of said free public highway, was the sum of $5,333.90, and of that sum, eleven thirty-fifths, or the sum of $1,676.37, was the proportion chargeable to said town of East Hartford. . . . 12. That on said 29th day of June, A. D. 1893, the said George W. Fowler, as chairman of said corporation, without any authority of law, and in disregard of his official duty, wrongfully and unlawfully drew his orders in favor of said John S. Risley, as treasurer of said corporation, upon the treasurer of said town of East Hartford, for the aggregate sum of $10,962.26, being eleven thirty-fifths of the sum of $34,879.94, which said sum was falsely pretended by said Fowler and by said corporation to have been expended for legal services, and was falsely so entered in the account of said John S. Risley as treasurer of said corporation, and said sum of $10,962.26 was in addition to the sum lawfully assessed against said town of East Hartford, as set out in paragraph 11. 13. That ' The Board for the Care of Highways and Bridges across the Connecticut River in Hartford County,' was not indebted for, on October 5th, 1892, and between October 5th, 1892 and June 29th, 1893, did not expend for any legal services rendered said corporation which said corporation might lawfully contract for, pursuant to the powers granted to it by the General Assembly, said sum of $34,879.94, or any part of said sum. 13a. That at the date of said orders to the amount of

$10,962.26, so illegally drawn upon the treasurer of said town of East Hartford as aforesaid, nothing whatever was due and payable to 'The Board for the Care of Highways and Bridges across the Connecticut River in Hartford County,' from the said town of East Hartford, as the proportional amount payable by said town for the expenses of repairing and maintaining the free public highway aforesaid, and of any damages resulting from the defective condition of said highway or of the bridges thereon. 15. That on said 29th day of June, A. D. 1893, the defendant Charles Merriman was, ever since has been, and now is, treasurer of said town of East Hartford. 16. That on the 30th day of June, A. D. 1893, the said town of East Hartford, and the said Merriman as treasurer of said town, paid to said John S. Risley, as treasurer of the said corporation, unlawfully and in violation of the rights of the plaintiff and of the other inhabitants and taxpayers of said town of East Hartford, the sum of $5,962.26, being part of said illegal orders so illegally drawn as aforesaid for said sum of $10,962.26, and on said day the said Merriman, as treasurer of said town of East Hartford, unlawfully and in like violation of the rights of the plaintiff, undertook to accept and, so far as said illegal act had any effect, did accept in the name of said town of East Hartford and agreed to pay from the treasury thereof, four of said illegal orders, to wit: two of said illegal orders, each for the sum of $1,500, and two other illegal orders, each for the sum of $1,000, amounting in all to the sum of $5,000, which four said orders are still outstanding and unpaid. 17. That on the 30th day of June, A. D. 1893, when said illegal payment was made of said illegal orders to the amount of $5,962.26 by the defendants, said town of East Hartford and said Merriman as treasurer, there was in the hands of the defendant Merriman, as treasurer of said town, money belonging to the said town of East Hartford, raised by taxation, of which the plaintiff had paid a part, or money raised upon the credit of said town of East Hartford for which the plaintiff was liable to be taxed and in which he was interested as an inhabitant, elector, and taxpayer of said town, and

said illegal orders of the amount last above mentioned were unlawfully paid from said money so raised as aforesaid, and the plaintiff was thereby wrongfully injured and affected and greatly damaged. 18. That said defendants, the said town of East Hartford and the said Merriman as treasurer of said town of East Hartford, intend to pay the said four illegal orders amounting to the sum of $5,000, now outstanding and unpaid, as hereinbefore set forth, out of money belonging to said town of East Hartford, now in the hands of the defendant Merriman as treasurer of said town, or hereafter to be paid into his hands as such treasurer, raised or to be raised by taxation, of which the plaintiff has paid or will be compelled hereafter to pay a part, or out of money raised or to be raised upon the credit of said town and now paid, or hereafter to be paid into the hands of the defendant Merriman as treasurer of said town, for which the plaintiff is liable to be taxed, and in which he is interested as an inhabitant, elector and taxpayer of said town of East Hartford. 18*a.* That if the said defendants pay the amount of said four illegal orders aforesaid out of said money of said town of East Hartford, raised or to be raised as aforesaid, the plaintiff will be wrongfully affected and injured and greatly damaged. 19. That the plaintiff is apprehensive and believes that said defendants are about to pay said four illegal orders amounting to said sum of $5,000, at an early date, and will do so to the great injury and damage of the plaintiff and the other inhabitants and taxpayers of said town of East Hartford, unless they are restrained by injunction, and that the plaintiff has no adequate remedy at law. 20. That on the day of July, 1893, two of the illegal orders described as outstanding and unpaid in paragraph 16, each bearing the indorsement in blank of John S. Risley as treasurer, as aforesaid, one being for the sum of $1,500, and the other for the sum of $1,000, came into possession of Benjamin Wells of said town of East Hartford, who ever since has held and now holds said two illegal orders, and claims to be the owner thereof. 21. That on the day of July, 1893, the remaining two of said outstanding and unpaid illegal orders de-

scribed in paragraph 16, one for the sum of $1,500, and the other for the sum of $1,000, each bearing the indorsement in blank of said John S. Risley as treasurer, as aforesaid, came into the hands of Eunice Cowles of the town of Hartford, who ever since has held and now holds said two illegal orders and claims to be the owner thereof. 22. That said Benjamin Wells and Eunice Cowles are interested in the determination of this action, and are made parties defendant.

"The plaintiff claims: (1) an injunction restraining and enjoining the defendants, the said town of East Hartford, and the said Charles Merriman, as he is treasurer of said town of East Hartford, and his successors in office and each of them, from paying said four illegal orders, amounting in all to the sum of $5,000, and any of them and any part of said sum of $5,000 ; (2) such other and further relief in the premises as may to equity appertain."

The answer of the defendants was as follows :—

"Paragraph 1. The defendants admit paragraphs 1, 4, 5, 7, 8, 10, 15, and 22 of plaintiff's amended complaint. Par. 2. In respect to paragraphs 2 and 3 of said amended complaint, the defendants admit that the General Assembly of the State of Connecticut, at its January session, 1887, passed an Act duly approved by the Governor, May 19th, 1887, and which took effect upon its passage, which Act was entitled 'The Act to Establish Free Public Highways across the Connecticut River in Hartford County,' and being chapter 126 of the Public Acts of 1887, which said Act is the Act referred to in said paragraphs 2 and 3 of the amended complaint, and is hereby referred to and made a part of this defense as fully as if it and all its provisions were incorporated herein. Par. 3. In respect to paragraph 5 of the amended complaint the defendants admit the rendition of the judgment or decree referred to in paragraph 5, and said judgment or decree and the proceedings in said court resulting in said judgment or decree are hereby made a part of this defense. Par. 4. In respect to paragraph 6 of said amended complaint the defendants admit that by the provisions of said Act the town of East Hartford became liable to pay eleven thirty-fifths of the ex-

pense of repairing and maintaining said free public highway, and eleven thirty-fifths of any damages resulting from the defective condition of said free public highway, or the bridges thereon, and deny the rest of said paragraph 6. Par 5. In respect to paragraph 9 of the amended complaint the defendants admit that, pursuant to the provisions of said Act of the General Assembly, the chairman of said corporation was empowered to draw his order in favor of the treasurer of said corporation upon the treasurer of the town of East Hartford for eleven thirty-fifths of the expense of repairing and maintaining said free public highway, and also for eleven thirty-fifths of any damages resulting from the defective condition of said free public highway, and deny the rest of said paragraph 9. Par. 6. Paragraph 11 of the amended complaint is denied. Par. 7. In respect to paragraph 12 of the amended complaint the defendants admit that on the 29th of June, 1893, the said George W. Fowler, as such chairman, drew orders in favor of said John S. Risley, as treasurer of said corporation, upon the treasury of the town of East Hartford for the aggregate sum of $10,962.20, which sum, mathematically considered, is admitted to be, for the purpose of this case, eleven thirty-fifths of the sum of $35,879.94; and the defendants deny the rest of said paragraph 12 of said amended complaint. Par. 8. Paragraphs 13 and 13*a* of the amended complaint are denied. Par. 9. In respect to paragraph 16 of said amended complaint defendants admit that on the 30th day of June, 1893, the said town of East Hartford and the said Merriman, as treasurer of said town, paid to said John S. Risley, as treasurer of said corporation, the sum of $5,962.25, being part of said orders drawn as aforesaid for said sum of $10,962.20; and that on said day the said Merriman, as treasurer of said town of East Hartford, undertook to, and did, accept, in the name of said town of East Hartford, and agreed to pay from the treasury thereof, four of said orders, to wit, two of said orders, each for the sum of $1,500, and two other of said orders, each for the sum of $1,000, amounting, in all, to the sum of $5,000, which four said orders are still outstanding and unpaid; and the defendants

deny the rest of said paragraph 16 of said amended complaint. Par. 10. In respect to paragraph 17 defendants admit that on the 30th day of June, 1893, when said payment of said orders to the amount of $5,962.20 was made by the defendants, said town of East Hartford and said Merriman as treasurer, there was in the hands of the defendant Merriman, as treasurer of said town, money belonging to the town of East Hartford and raised by taxation, or money raised upon the credit of the said town of East Hartford, for which the plaintiff was liable to be taxed, and in which he was interested as an inhabitant, elector, and taxpayer of said town; and defendants deny the rest of said paragraph 17. Par. 11. In respect to paragraph 18 of the amended complaint the defendants admit that the town of East Hartford and said Merriman as treasurer of said town, intend to pay said four orders, amounting to the sum of $5,000, now outstanding and unpaid, as aforesaid, out of money belonging to said town of East Hartford now in the hands of the treasurer of said town, or hereafter to be paid into his hands, raised, or to be raised by taxation, of which the plaintiff has paid, or will be compelled to pay, a part, or out of money raised, or to be raised, upon the credit of said town, and now paid, or hereafter to be paid, into the hands of the defendant Merriman, as treasurer of said town, for which the plaintiff is liable to be taxed, and in which he is interested as an inhabitant, elector and taxpayer of said town of East Hartford; and defendants deny the rest of said paragraph 18 of the amended complaint. Par. 12. The defendants deny paragraph 18*a* of the amended complaint. Par. 13. In respect to paragraph 19 of the amended complaint the defendants admit that the plaintiff believes that the defendants are about to pay said four orders, amounting to said sum of $5,000, at an early date; and the defendants deny the rest of said paragraph 19 of the amended complaint. Par. 14. In respect to paragraph 20 of the amended complaint the defendants admit that on or before the    day of July, 1893, two of the said orders so outstanding and unpaid, and each bearing the indorsement in blank of said John S. Risley, as treasurer, as aforesaid, one for the sum of $1,500, and the other for the

sum of $1,000, came into the possession of defendant Wells, who ever since has held, and now holds, said two orders, and claims to be the owner thereof ; and the defendants deny so much of paragraph 20 as alleges that said orders, or either of them, were illegal.   Par. 15.  The defendants deny so much of paragraph 21 of said amended complaint as alleges that the orders therein referred to were illegal; and admits all the rest of paragraph 21.   Par. 16.  The said orders were in the form following, the amount being omitted: ' No. 7D.   Hartford, June 29, 1893.   *To the Treasurer of the Town of East Hartford :* Pay to the order of John E. Risley, Treas., dollars, and charge the same to the account of the Board for the Care of Highways and Bridges across the Connecticut River in Hartford County.   G. W. Fowler, *Chairman.*'   They were indorsed in blank upon the back, ' John S. Risley, Treas.' They were also indorsed by the treasurer of the defendant town across the front, ' Accepted with 5% interest.   Chas. Merriman, Treas. June 29/93,' and were so accepted, as per said indorsement by said treasurer on said date.   Par. 17.  Afterwards, and on the     day of July, 1893, the defendants Benjamin Wells and Eunice Cowles, purchased in open market of the then holders thereof, for full value, in good faith, and without notice of any defect, said orders, and now hold the same, wholly unpaid and unsatisfied.   Par. 18.  In the annual report of the selectmen and treasurer and other officers of said town of East Hartford to the town of East Hartford, in the year ending September 11th, 1896, and in other such reports, there was contained, as a liability, a statement that said orders were still outstanding as an immediate liability to the amount of $5,000, bearing interest at the rate of 5 per cent, and said report, with said statement of said orders as liabilities, was accepted by said town of East Hartford. Par. 19.  The said orders were made, accepted, indorsed and negotiated in payment for services of persons employed and expenses incurred by the first selectman and town agent of the defendant town, and by said ' Board for the care of Highways and Bridges across the Connecticut River in Hartford County,' to relieve and absolve the defendant town from obli-

gation and liability respecting the said highway and bridge, and the care, repair and maintenance thereof; and said services and expenses were, in part, rendered and expended in respect to the preparation of the Act of the General Assembly referred to in the 10th paragraph of the amended complaint, and in respect to the proceedings before the committee of the General Assembly in respect to said legislation."

To the foregoing answer the plaintiff demurred, as follows:—

" The plaintiff demurs to the defendants' amended answer, and particularly to paragraphs 16, 17, 18 and 19 of the defendants' amended answer.

" *First.* Because ' The Board for the Care of Highways and Bridges across the Connecticut River in Hartford County' had no power or authority to employ persons or incur expenses to relieve and absolve the defendant town from obligation and liability respecting the said highway and bridge, and the care, repair and maintenance thereof; and no power or authority to draw orders, or cause orders to be drawn, upon the treasurer of the defendant town to the order of John S. Risley, treasurer of said board, in payment for the services of persons employed and expenses incurred for said purposes. *Second.* Because George W. Fowler, chairman of said board, had no power or authority to draw orders upon the treasurer of the defendant town to the order of John S. Risley, treasurer of said board, in payment of persons employed and expenses incurred to relieve and absolve the defendant town from obligation and liability respecting said highway and bridge, and the care, repair and maintenance thereof, whether said persons were employed and said expenses were incurred by said board or by the first selectman and town agent of the defendant town, or by said board and said first selectman and town agent acting jointly. *Third.* Because John S. Risley, the treasurer of said board, had no power or authority to indorse and negotiate any orders drawn by said George W. Fowler, as chairman of said board, in payment for services of persons employed and expenses incurred by said board, or by the first selectman and town agent of the defendant town, or by said board and said first selectman and town agent jointly,

to relieve and absolve the defendant town from liability and obligation respecting said highway and bridge, and the care, repair and maintenance thereof. *Fourth.* Because the first selectman and town agent of the defendant town had no power or authority, either alone or acting jointly with said board, to employ persons or incur expenses to relieve and absolve the defendant town from obligation and liability respecting the said highway and bridge, and the care, repair and maintenance thereof; and it is not alleged that defendant town appointed an agent for such purpose. *Fifth.* Because the defendant Merriman, as treasurer of the defendant town, had no power or authority to accept with five per cent. interest, in behalf of the defendant town, any orders drawn upon him, as said treasurer, by George W. Fowler, as chairman of said board, to the order of said John S. Risley, as treasurer of said board, in payment for services of persons employed or expenses incurred by said board or by the first selectman and town agent of the defendant town, to absolve and relieve the defendant town from obligation and liability respecting said highway, and the care, repair and maintenance thereof. *Sixth.* Because the defendant Merriman, as treasurer of the defendant town, had no power or authority to accept with five per cent. interest, in behalf of the defendant town, any orders drawn upon him as such treasurer, by George W. Fowler, as chairman of said board, to the order of said John S. Risley, as treasurer of said board. *Seventh.* Because the defendants, Benjamin Wells and Eunice Cowles, the purchasers and holders of said orders, were bound to take notice of the scope and measure of the powers of the defendant Charles Merriman, as the treasurer of the defendant town, and to take notice of his want of power and authority to bind the defendant town by his acceptance in its behalf, with five per cent. interest, of any orders of George W. Fowler, chairman of said board, upon said defendant Merriman, as treasurer of defendant town, to the order of John S. Risley, as treasurer of said board. *Eighth.* Because the defendants Benjamin Wells and Eunice Cowles were bound to take notice of the lawful powers and duties of said board, and of the lawful powers and duties of

its chairman and its treasurer, and to take notice that the
chairman of said board had no power to draw orders to the
order of its treasurer upon the defendant Merriman, as treas-
urer of the defendant, for any purposes save those specified in
the Act of the General Assembly creating said board, and
were bound at their peril to enquire whether the orders they
purchased were or were not drawn by said George W. Fowler,
as chairman, and indorsed by said John S. Risley, as treasurer,
for the purposes specified in said legislative Act.    *Ninth.*  Be-
cause the orders held by said defendants Benjamin Wells and
Eunice Cowles were and are void, for want of power in the
said board and in the first selectman and town agent of de-
fendant town to employ persons and incur expenses for the
purposes specified in paragraph 19 of the amended answer,
and for want of power in the said George W. Fowler, as chair-
man of said board, to draw said orders for the purposes speci-
fied in paragraph 19 of the amended answer; and likewise
for want of power in said John S. Risley, as treasurer of said
board, to indorse and negotiate the same, and for want of
power in the defendant Merriman, as treasurer of said defend-
ant town, to accept the same with five per cent. interest on
behalf of defendant town.    *Tenth.*  Because it is not alleged
in paragraph 18 of said amended answer that the warning of
the town meeting of the defendant town which accepted the
reports of the town officers mentioned in said paragraph for
the year ending September 11th, 1896, or the warning of any
town meeting which accepted any like reports, contained any
notice that any unauthorized act or acts of the first selectman
and town agent, or of the town treasurer of the defendant
town, would be brought before such town meeting for ratifica-
tion.    *Eleventh.*  Because there is no allegation in said para-
graph 18 that any unauthorized act of the first selectman and
town agent, or of the treasurer of the defendant town, was,
in fact, submitted for ratification to any town meeting of the
defendant town with a statement of the material facts, so
that the defendant town might take lawful action in the
premises.    *Twelfth.*  Because the facts alleged in said para-
graph 18 are wholly insufficient in the law to constitute a

ratification on the part of the defendant town, of the unau-
thorized acts of the defendant Merriman, as treasurer of the
defendant town, in accepting with five per cent. interest the
orders purchased and held by the defendants Wells and
Cowles, as set out in paragraph 16 of the amended answer,
and of the unauthorized acts of the first selectman and town
agent of defendant town in employing persons and incurring
expenses for the purposes set out in paragraph 19 of the
amended answer. *Thirteenth*. Because the defendant town
had no power to employ persons or incur expenses to relieve
and absolve it from liability and obligation respecting the said
highway, and the care, repair and maintenance thereof, a duty
imposed on the defendant town by the State of Connecticut,
and no power to ratify any unauthorized acts of its officers or
agents in employing persons or incurring expenses for such
purposes."

*Henry Stoddard*, with whom was *William C. Case*, for the
appellants (defendants).

This case is controlled by the principles of law involved
in the very recent cases of *Farrell* v. *Derby*, 58 Conn. 234,
and *Dibble* v. *New Haven*, 56 id. 199, 202. Both of these
cases proceed upon the principle that in this State the town,
in reference to the management of its prudential affairs, may,
at its discretion, pay any debt or obligation incurred by any
agency, whether authorized primarily or not. The town of
East Hartford having received the benefit of the employment
and services of the agents and attorneys in question, and in-
tending and desiring to pay the obligation, it is unnecessary
to consider whether the town is strictly liable at law upon
the orders in question. *Norwalk Gas Light Co.* v. *Norwalk*,
63 Conn. 522; *East Hartford* v. *American Nat. Bank*, 49 id.
553. The defendant town is liable at law upon the orders
in question, and is so liable in either of two views of the
case. In the first place the orders were drawn in payment
of claims arising from the care, maintenance, and repair
of the highway in question. It is novel doctrine in Connec-
ticut that a town cannot pay the necessary and legitimate

Goodwin *v.* East Hartford et al.

expenses connected with obtaining proper legislation in respect to the highways which it is bound to maintain. And, secondly, the authority constituted by law to determine the question has determined that the claims are for the care, maintenance, and repair of the highway. The orders in question are negotiable in character and in the hands of the defendants, Wells and Cowles, who are *bona fide* owners, the town is liable upon the orders. In this State such orders have been treated and regarded to a large extent as negotiable, and have circulated as such. *Bethlehem* v. *Watertown,* 51 Conn. 493. But the orders in question further contain a substantial recital of fact upon which the purchaser in the open market is entitled to rely. *Andes* v. *Ely,* 158 U. S. 324 ; 2 Dan'l on Neg. Instr. (3d ed.), 537, 538. The application to the legislature of 1893, and obtaining the repealing Act of that year, was not an unlawful act, and the Superior Court erred in ruling that it was. It is neither resistance to, nor an attack upon, the sovereignty of the State of Connecticut. The cases cited by the plaintiff to support his contention are not in point. Cases in which the town had no duty, and no right in respect to the subject-matter in question, have no application to the case at bar.

*Francis H. Parker,* for the appellee (plaintiff).

The orders in question, drawn for the purposes set out in paragraph 19 of the answer, were *ultra vires* and void. These orders were not drawn for the expenses of repairs and maintenance, nor were they drawn in payment of damages arising from defects. The defendant town had no greater power to do the acts set out in the answer than the bridge board had. Section 7 of the Bridge Act of 1887 imposes upon the town the duty of paying orders drawn for lawful purposes, and no statute authorizes the town to pay any orders drawn for other purposes. The act of one selectman, even if he be first selectman, is ineffectual. He cannot bind the town. The addition of the words "town agent," is immaterial. There is no such officer, and no statute prescribing the duties of such an officer. Again, the treasurer of the

town had no power to accept the orders in question, with interest at 5 per cent, or in any form. A town treasurer cannot bind his town by making or accepting commercial paper of any kind, nor has he any power to accept town orders. His powers are strictly limited by statute, and he has no power to pay any illegal demand upon the town. Gen. Stat. §§ 84, 85, 86 ; *East Hartford* v. *Amer. Nat. Bank*, 49 Conn. 552, 553; *Bloomfield* v. *Charter Oak Nat. Bank*, 121 U. S. 121; *Lowell Savings Bank* v. *Winchester*, 8 Allen, 114; *Smith* v. *Cheshire*, 13 Gray, 318; *Railroad Savings Bank* v. *Lowell*, 109 Mass. 214; *Agawam Bank* v. *South Hadley*, 128 id. 506. The cases of *Farrell* v. *Derby*, 58 Conn. 234, and of *Dibble* v. *New Haven*, 56 id. 199, are not in point. Here the public corporations are not defending their corporate rights against the aggressions of interested parties. They are the aggressors in a movement against the sovereignty of the State, and if they could not resist the State, they certainly could not attack it. There can be no ratification by mere implication ; it must be by direct action, and with a full understanding of the facts. Here there is nothing to show such understanding or any intent on the part of the town to ratify any *ultra vires* acts of its officers. Gen. Stats. §§ 33, 64, 84, 85, 86 ; *Turney* v. *Bridgeport*, 55 Conn. 418; *Brooklyn Trust Co.* v. *Hebron*, 51 id. 29; *Dibble* v. *New Haven*, 56 id. 202; *Pinney* v. *Brown*, 60 id. 168, 169, and cases cited. But if the orders in . question were *ultra vires* and void, then they were incapable of ratification by the defendant town. 1 Dill. on Mun. Corp. § 463. The defendants, Wells and Cowles, are not entitled to the immunities of *bona fide* holders of negotiable commercial paper. 1 Beach on Pub. Corp. §§ 242, 243; *Ladd* v. *Franklin*, 37 Conn. 62; *East Hartford* v. *Amer. Nat. Bk.*, 49 id. 552, 553; *Turney* v. *Bridgeport, supra ; Barnet* v. *Denison*, 145 U. S. 135 and cases cited. The orders or warrants of public corporations have not the same qualities as ordinary negotiable commercial paper, in respect to privileges of *bona fide* holders. *Wall* v. *Monroe County*, 103 U. S. 78; *Hayes* v. *Holly Springs*, 114 id. 120; *Nashville* v. *Ray*, 86 id. 468 and cases cited; *Claiborne* v. *Brooks*, 111 id. 400; *Con-*

*cord* v. *Robinson*, 121 id. 165; *Smith* v. *Cheshire*, 13 Gray, 165. Even *bona fide* holders of the obligations of public corporations cannot recover, if the obligations were *ultra vires.* Dill. on Mun. Corp. §§ 545, 546, 936; Beach on Pub. Corp. §§ 217, 936, 937; *Brenham* v. *German-Amer. Bank*, 144 U. S. 173 and cases cited; *Merchants Exchange Bank* v. *Bergen Co.*, 115 id. 384; *Hayes* v. *Holly Springs, supra; Ottawa* v. *Carey*, 108 U. S. 110; *Lewis* v. *Shreveport*, ibid. 282; *Marsh* v. *Fulton*, 10 Wall. 676 and cases cited.

ANDREWS, C. J.   The plaintiff is a citizen and tax-payer of the town of East Hartford. The judgment of the Superior Court enjoined that town, perpetually, from paying four certain orders of like tenor with the one recited in the sixteenth paragraph of the defendants' answer. If the law is so that the town is, in no event, lawfully under obligation to pay those orders, then the demurrer was properly sustained and the judgment is correct.

It will simplify the discussion if we keep distinctly in mind from the outset, that the town is not liable as the maker or drawer of the orders.   An inspection of the order so recited shows that no agent of the town, as such, took part in the making of it.   The obligation of the town to pay those orders, if it exists at all, must arise from one of the three, or possibly four, following conditions: First, because the said highway board had authority by law to issue orders for the purpose for which it appears by the record these orders were issued, and so to make them binding on the town; or, second, assuming that the orders were invalid when issued, because the town has ratified them; or third, because the orders were negotiable, and so their validity cannot be questioned in the hands of the present holders.   The possible fourth condition is the acceptance of the bonds by the town treasurer.   But this may be wholly disregarded.   A town treasurer has no authority to bind a town by his acceptance of an illegal order.

Let us, then, first inquire as to the authority of the said board.   At its January session in the year 1887, the legisla-

ture passed an Act entitled, " An Act to establish Free Public Highways across the Connecticut River in Hartford County,"—by subsequent legislation made to apply only to the Hartford Bridge,—by which it was provided that the State's Attorney in Hartford county should bring a complaint to the Superior Court in that county against the proprietors of the said Hartford bridge, then being a toll bridge; that said court, upon such complaint, should appoint commissioners who should lay out and establish a highway across the Connecticut river where the said toll bridge was, and along and across the causeway and approaches appurtenant to and connected therewith, and should appraise the damages and benefits; that "said highway when laid out and established as herein provided, shall be a free public highway;" that said commissioners should determine what towns were specially benefited by the layout and establishment of said highway, and should assess to them such benefits as they should find equitable.　The said Act, in its seventh section, then provided that "when said highway, so established as aforesaid, shall have become a free public highway as aforesaid, the same shall thereafter be maintained by the said towns so assessed in proportion to the assessment upon said towns as hereinafter provided.　The first selectmen of the said several towns shall meet on the second Monday after said highway shall have become a free highway as aforesaid, at the office of the selectmen in Hartford, and annually thereafter and at such other times as they shall deem necessary, and said several first selectmen shall constitute a board for the care, maintenance, and control of said highway.　Said board shall appoint a chairman, secretary, and treasurer, and said board shall apportion the expense of repairing and maintaining said highway upon the said several towns in proportion to the assessment against said towns as aforesaid, and said chairman shall draw his order on the respective treasurers of said towns to the order of the treasurer of said board for the proportional amount payable by said towns as aforesaid for such repairs and maintenance.　Any damages resulting from the defective condition of said highway or the bridges upon the

same shall be paid by said towns in proportion to the said assessment. For the purpose embraced in this section the said board shall be a body politic and corporate by the name of The Board for the Care of Highways and Bridges across the Connecticut River in Hartford County, and actions may be brought against said board by service upon its secretary, and any judgment recovered therein shall be paid by said towns in said proportions and in the same manner as herein provided for the payment of the expenses of repairs and maintenance as aforesaid. Said board shall annually report to said several towns the expenses incurred and paid by them during the preceding year."

Pursuant to the provisions of that Act the State's Attorney for Hartford county brought a complaint to the Superior Court in that county at its October term, 1887, and thereupon commissioners were appointed and such proceedings were had, that said Superior Court by its decree laid out and established a free public highway across the Connecticut River at the place where the toll bridge of the Hartford Bridge Company then was, and along and across the causeways and approaches appurtenant to and connected therewith, and found that the towns of Hartford, East Hartford, Glastonbury, South Windsor and Manchester were especially benefited by said layout, and assessed the benefits to each, the proportion of said expense imposed on the town of East Hartford being eleven thirty-fifths of the entire expense; so that the said town of East Hartford became and was liable to pay in the manner set forth in the said Act, eleven thirty-fifths of the expense of repairing and maintaining said free public highway, and eleven thirty-fifths of any damage resulting from the defective condition of said free public highway or the bridges thereon; and so far as the terms of said Act express, for no other expense whatever.

Afterwards, in September, 1889, the first selectmen of the said towns met, as is provided in said Act, and organized the corporation therein created, by the name of "The Board for the Care of Highways and Bridges across the Connecticut River in Hartford County," by electing George W. Fowler,

then the first selectman of Hartford, its chairman, and John S. Risley, then the first selectman of Manchester, as its treasurer; and said corporation, so organized, immediately assumed the care and control of said free public highway, repairing and maintaining the same until the 29th day of June, 1893. On said last mentioned day, as it is alleged in the tenth paragraph of the complaint, the General Assembly, being then in session, passed an Act which was made to take effect on its passage, by which the said Act of 1887 was repealed, and the State itself assumed and undertook the duty of repairing and maintaining thereafter the said free public highway. The purposes for which the said orders were issued, is set forth in the nineteenth paragraph of the defendants' answer, as follows:—"The said orders were made, accepted, endorsed, and negotiated in payment for services of persons employed and expenses incurred by said first selectman and town agent of the defendant town, and by said 'Board for the Care of Highways and Bridges across the Connecticut River in Hartford County,' to relieve and absolve the defendant town from obligation and liability respecting the said highway and bridge, and the care, repair, and maintenance thereof; and said services and expenses were, in part, rendered and expended in respect to, and in the preparation of, the Act of the General Assembly referred to in the tenth paragraph of the amended complaint, and in respect to the proceedings before the committee of the General Assembly in respect to said legislation."

We have already seen that the said orders on their face indicate that the first selectman and town agent of the defendant town did not, as such, take any part in the making or drawing of the orders. The first selectman and town agent of the defendant town was a member of said board. He took no part in the making or issuing the orders as such member. If said board might lawfully issue the said orders in the payment of such employment and expenses, and so make them a charge on the town, then the orders should be paid, but otherwise not. And this brings us directly to the question of whether or not the said "Board for the Care of

Highways and Bridges across the Connecticut River in Hartford County" could lawfully issue these orders for such purposes and make them obligatory on the town of East Hartford.

It has been noticed that the terms of the Act which created the board made it the duty of said board to care for, maintain and control the said highways, and gave it authority to apportion the expense of repairing and maintaining the same, as well as any damages resulting from the defective condition of the said highway and bridge, upon the several towns named in the decree of the Superior Court. The terms of the Act give that board no power to impose on the towns the expense of anything else. The terms of the Act gave that board no authority to employ agents to appear before the legislature, for any purpose whatever; least of all to employ agents to procure legislation which would terminate its own existence. And it seems to us that said board did not have such power by implication.

If we regard the board simply as a device to enable the representatives of the five towns to perform a municipal duty imposed on the town jointly with the other towns, it is clear that the powers of such a board should not be extended by implication beyond the performance of the joint municipal duty which made some such device necessary. If, on the other hand, we regard the board as a municipal corporation, it is one with very limited powers, created for a specified duty only, and must be judged by the rule applicable to such a corporation. Public or municipal corporations are not associations, but are sub-divisions of the State. The charter of such a corporation is not a contract between the corporation and the State, nor between the corporators themselves. The effect of an Act of the legislature incorporating a municipality is to invest the governing authorities of the municipality— either a majority of the voters, or such officers as are prescribed—with the power of local government over the inhabitants of that district. Such an Act, strictly speaking, confers powers which did not exist before; it confers on the governing authority the power of laying taxes, and passing local laws for the purposes named in the Act, without the

previous consent of the people of the district. The governing authorities possess no powers or faculties not conferred upon them either expressly or by fair implication by the law which creates them, or by other statutes applicable to them. Dillon on Mun. Corp. § 21; Morawetz on Corp. §§ 24, 649, 1046; *Coler* v. *Cleburne*, 131 U. S. 162.

A municipal corporation has no power by implication, unless it is one that may be necessary to the successful carrying out of those powers which are expressly given. It is more reasonable to suppose that the legislature, in creating a corporation, intended that it should succeed rather than that it should fail. Hence the courts hold that such necessary powers were really intended to be granted. If the powers expressly given can be exercised without aid from implication, then nothing can be implied. And there can be no implication of a power existing in a corporation inconsistent with those which are expressly granted. Obviously a power destructive of those expressly granted, cannot be implied. Perpetual continuance is ordinarily an essential ingredient in the idea of a corporation. A corporation cannot put an end to its own existence; it certainly cannot unless the power to do so is expressly given to it. The said board had no power to make the orders in question obligatory on the defendant town, unless it had the implied power to employ agents to appear before the legislature to procure legislation to terminate its own existence. Such an implication cannot be admitted.

A large part of the defendants' argument is devoted to the claim that the town of East Hartford might — as could any other town in the State—lawfully employ counsel or agents to appear before the legislature to procure any legislation in which the town conceives itself to be interested. They cite *Farrel* v. *Derby*, 58 Conn. 234. That case, however, goes no further than to hold that a town may lawfully expend money it has raised by taxation, to protect its corporate integrity, privileges, or property, from adverse legislation. The doctrine of that case is one that is not to be carried further. It cannot be stretched into an authority justifying a town to

embark in legislative attacks on other corporations, because the town might think itself benefited thereby.

In one aspect of this case it is entirely immaterial whether the town has or has not power to employ agents to appear before the legislature. If the town of East Hartford has power to employ agents or attorneys for that purpose, it has not done so in this case. In another aspect of the case the question of the power of the town to employ agents for such purpose, is material, and that is on the claim of a ratification. The defendants say that the town of East Hartford has ratified these orders. The averments in the pleadings from which ratification is claimed, are these: In the eighteenth paragraph of the complaint it is alleged that "the said defendants, the said town of East Hartford and the said Merriman as treasurer of said town of East Hartford, intend to pay the said four illegal orders amounting to the sum of $5,000 now outstanding and unpaid as hereinbefore set forth." And in the eighteenth paragraph of the answer it is alleged as follows: "In the annual report of the selectmen and treasurer and other officers of said town of East Hartford to the town of East Hartford, in the year ending September 11th, 1889, and in other such reports, there was contained, as a liability, a statement that said orders were still outstanding as an immediate liability to the amount of $5,000, bearing interest at the rate of 5 per cent., and said report, with said statement of said orders as liabilities, was accepted by said town of East Hartford."

The claim as stated is like this: The town itself might have employed the agents and attorneys to appear before the legislature to procure the legislation by which it was released from contributing towards the expense of the free highway; the said board did employ attorneys who went before the legislature and procured such legislation and which benefited the town; in payment for the services so rendered the board issued the orders in question, and now the town, by the action so above alleged, has ratified those orders; and as there can be no ratification of a contract unless there was power to enter into that contract originally, the question of

the power of a town to employ agents to appear before the legislature might be material.

It would be material, if the disposition of this case depended on it. We have no occasion, however, to pass upon that question, for the reason that the allegations of the pleadings do not show a ratification. There is no ratification unless the party has full knowledge of all the facts, nor unless there is the intent to ratify. *Dibble* v. *New Haven*, 56 Conn. 199, 202; *Stanton* v. *New York & E. R. Co.*, 59 id. 272, 281; *Ansonia* v. *Cooper*, 64 id. 536, 544. The allegations here fail to show that the town had full knowledge, and fail to show that there was an intent to ratify. We think there was no ratification.

The orders were not negotiable so as to estop the plaintiff or the town of East Hartford from showing their illegality in the hands of the present holders. Municipal orders or bonds are not ordinarily negotiable. The orders in this case are similar to, and in effect precisely like, the orders discussed by the Supreme Court of the United States in the case of *Mayor* v. *Ray*, 19 Wall. 468, 477,—a case in which the city of Nashville, Tenn., had issued orders for the payment of money borrowed by the city. There was no express authority in its charter for the city to borrow money for any purpose. MR. JUSTICE BRADLEY, in giving the opinion of the court, said: "Vouchers for money due, certificates of indebtedness for services rendered or for property furnished for the use of the city, orders or drafts drawn by one city officer upon another, or any other device of the kind, used for liquidating the amounts legitimately due to public creditors, are of course necessary instruments for carrying on the machinery of municipal administration, and for anticipating the collection of taxes. But to invest such documents with the character and incidents of commercial paper, so as to render them in the hands of *bona fide* holders absolute obligations to pay, however irregularly or fraudulently issued, is an abuse of their true character and purpose. It has the effect of converting a municipal organization into a trading company, and puts it into the power of corrupt officials to involve a political community in irretrievable bankruptcy.

No such power ought to exist, and in our opinion no such power does legally exist, unless conferred by legislative enactment, either express or clearly implied. . . . But where the power has not been given, parties must take municipal orders, drafts, certificates, and other documents of the sort, at their peril. Custom and usage may have so far assimilated them to regular commercial paper as to made them negotiable, that is, transferable by delivery or indorsement. This quality renders them more convenient for the purposes of the holder, and has, undoubtedly, led to the idea so frequently, but, as we think, erroneously, entertained, that they are invested with that other characteristic of commercial paper—freedom from all legal and equitable defenses in the hands of a *bona fide* holder. But every holder of a city order or certificate knows, that to be valid and genuine at all, it must have been issued as a voucher for city indebtedness. It could not be lawfully issued for any other purpose. He must take it, therefore, subject to the risk that it was lawfully and properly issued. His claim to be a *bona fide* holder will always be subject to this qualification. The face of the paper itself is notice to him that its validity depends upon the regularity of its issue. The officers of the city have no authority to issue it for any illegal or improper purpose, and their acts cannot create an estoppel against the city itself, its taxpayers, or people. Persons receiving it from them know whether it is issued, and whether they receive it, for a proper purpose and a proper consideration. Of course they are affected by the absence of these essential ingredients; and all subsequent holders take *cum onere*, and are affected by the same defect." It was holden that the order was invalid and that there could be no recovery against the city.

These considerations exactly apply to the present case, and show that the orders enjoined against were not negotiable. 1 Daniel on Neg. Inst. p. 324, § 427; Cooley on Const. Lim. (6th ed.), 269; Dillon on Mun. Corp. §§ 122, 406, 457, 733; Beach on Public Corp. § 195.

There is no error.

In this opinion the other judges concurred.