JANE O'CONNOR *vs.* METROPOLITAN LIFE INSURANCE COMPANY.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

600

Argued May 14th—decided July 10th, 1936.

*Philo C. Calhoun,* with whom, on the brief, was *Norman King Parsells,* for the appellant (defendant).

*William C. Strong,* with whom was *C. Driscoll Grimes,* for the appellee (plaintiff).

MALTBIE, C. J. In June, 1928, the defendant issued two policies of insurance upon the life of the plaintiff's husband, Michael T. O'Connor, aggregating $5000 in amount, both naming the plaintiff as beneficiary. The premiums were to be paid quarterly and they might

be paid at the home office of the defendant or to an authorized agent, but only in exchange for the company's official premium receipt signed by certain officers and countersigned by the representative of the company receiving the money. A grace period of thirty-one days after a premium became due was allowed. Payment of a premium "shall not maintain this Policy in force beyond the due date when the next premium is payable," except as otherwise provided. In the event of a policy lapsing in consequence of default in the payment of any premium it might be reinstated upon the production of evidence of insurability satisfactory to the company and payment of all overdue premiums with interest at six per cent. It was provided that "no agent is authorized to waive forfeitures, to alter or amend this Policy, to accept premiums in arrears, or to extend the due date of any premium." Each policy contained on the back a "Notice to Policy Holder" stating, among other things, that "the Company's agents have no authority to waive forfeitures, to alter or amend this Policy, to accept premiums in arrears, or to extend the due date of any premium." The application was made a part of the policy and it contained a statement that: "It is understood and agreed: . . . That no statement made to or by, and no knowledge on the part of, any agent, medical examiner or any other person as to any facts pertaining to the applicant shall be considered as having been made to or brought to the knowledge of the Company unless stated in either Part A or B of this application." The regulations of the defendant permitted agents soliciting policies to reinstate a policy at any time up to the Saturday following the expiration of the grace period upon full payment of the premium, provided the agent had seen the insured and satisfied himself of his good health; but if premiums were

offered after the Saturday following the expiration of the grace period a certificate showing that the insured was in sound health signed by him in the presence of the agent was required as a condition of the reinstatement of the policy.

Nineteen quarterly premiums were paid. While a number of these were paid after the expiration of the grace period, there is no reasonable basis in the evidence for a conclusion that the conditions stipulated in the policy as to the acceptance of late premiums were not complied with in each instance, except as to the payment of interest on overdue premiums. In February, 1933, a policy loan was granted and the premiums due on December 18th, 1932, were paid out of that loan. Further premiums became due on March 18th and June 18th. On August 6th the insured suffered a serious injury and the next morning was taken to a hospital. The plaintiff, on that day, collected some money owed her and in the evening after business hours summoned to her home the agent, Barnes, who had solicited the policies and had authority to collect the premiums, to give receipts for them when paid in accordance with the requirements of the defendant, and to do other acts of a similar nature. There she paid him the amount of the two overdue premiums, but without any interest.

There is little or no dispute as to the facts up to this point, but there is a sharp conflict in testimony as to what took place when this payment was made. The plaintiff offered evidence that she told Barnes that her husband had been hurt, how seriously she did not know, that he had been taken to the hospital and that she wanted to pay the premiums; and that she then tendered the amount of the premiums to him and he accepted the money, saying, "All right, Mrs. O'Connor." On the other hand, Barnes testified that, when

he came to the house, she gave as her reason for calling him that she did not want to keep the money in the house over night, that she said nothing about the accident which her husband had suffered, that he told her he would have to get a health certificate signed by the insured and witnessed by him, that she then said her husband was not "feeling so well" and he could leave the certificate, and that he refused to do this and said he would return later to get it. No premium receipts were given to the plaintiff.

The insured died in the course of the ensuing night. The next morning Barnes, not knowing this, turned over the money paid by the plaintiff to the manager of the defendant's branch office in Stamford and he deposited it in an account kept in his name as manager. It was the custom for him every Saturday to draw a check on this account and forward it to the home office of the defendant but any receipts for premiums for policies which had lapsed and not been reinstated were left in the account, later to be sent to the home office if the policy was reinstated, otherwise to be returned to the person making the payment. The money received from the plaintiff was kept in this account until August 22d. On August 9th Barnes learned of the death of the insured and on the 10th reported it to the manager. On August 22d the plaintiff accepted a check for the amount paid by her marked "Refund of provisional deposit," but this check was later returned to the company by her attorney.

An insurance company may by a provision in a policy restrict the authority of an agent exercising so limited powers as those given Barnes, to waive forfeitures incurred by a failure to comply with terms of the policy such as those involved in this case and such a provision will be effective unless the company has by its words or conduct enlarged the agent's au-

thority. *Ryan* v. *World Life Ins. Co.*, 41 Conn. 168, 175; *New York Life Ins. Co.* v. *Fletcher*, 117 U. S. 519, 530, 6 Sup. Ct. 837, approved in *Northern Assur. Co.* v. *Grand View Building Asso.*, 183 U. S. 308, 357, 22 Sup. Ct. 133; *Porter* v. *United States Life Ins. Co.*, 160 Mass. 183, 35 N. E. 678; Vance, Insurance (2d Ed.) p. 433; 5 Cooley, Briefs on Insurance (2d Ed.) p. 4011; 2 Couch, Cyclopedia of Insurance Law, § 522a. Where such a provision is inserted in a policy the insured cannot bind an insurer by means of a waiver through the act of the agent beyond the authority conferred on him under the terms of the policy as so enlarged. Barnes had no authority under the policy and regulations of the defendant to waive the forfeiture arising out of the failure of the insured to pay the March and June premiums within the thirty-one day period of grace allowed after they were due, except in accordance with these regulations. *Bouton* v. *American Mutual Life Ins. Co.*, 25 Conn. 542, 554. In the absence of any evidence that the premiums which had previously been paid to and accepted by him after the expiration of the grace period, had not been received in compliance with the provision of these regulations requiring a health certificate, there is no basis upon which it could be held that his authority had been enlarged by any customary course of dealing so as to empower him to accept premiums without such a certificate. *Lewis* v. *Phœnix Mutual Life Ins. Co.*, 44 Conn. 72, 89; *Conway* v. *Phœnix Mutual Life Ins. Co.*, 140 N. Y. 79, 84, 35 N. E. 420; *Thompson* v. *Fidelity Mutual Life Ins. Co.*, 116 Tenn. 557, 563, 92 S. W. 1098. The acceptance by him of the money paid him by the plaintiff without it would not waive the forfeiture incurred by the failure to pay the premiums within the period allowed by the policies.

The right of the plaintiff to recover, if it exists, must

be because the premiums paid were accepted by the company as represented by the manager of its branch office under such circumstances as to amount to a waiver of its right to claim, or an estoppel against its claiming, that the policy had lapsed by reason of the failure of the insured to furnish "evidence of insurability satisfactory to the company." Under the regulations of the company a certificate of sound health signed by the insured in the presence of Barnes would have amounted to such evidence. The waiver on the part of the company would arise, if at all, when the manager of its branch office accepted the amount paid by the plaintiff to Barnes, with knowledge that no certificate had been furnished. Such knowledge would in this case depend upon the fact that the company as represented by the manager was chargeable with the information which Barnes had when he accepted the premium.

In *MacKay* v. *Aetna Life Ins. Co.*, 118 Conn. 538, 548, 173 Atl. 783, we recently discussed the imputation to an insurer of information acquired by an agent within the scope of the authority reposed in him, in the light of our own and other decisions; we held that with certain exceptions the knowledge of the agent so acquired is the knowledge of the insurer; and we recently stated this as a general principle of the law of agency. *Myers* v. *Burke*, 120 Conn. 69, 75, 179 Atl. 88. We see no occasion to reconsider this question, as the defendant asks us to do, beyond pointing out that it is the rule approved by the overwhelming weight of authority. Vance, Insurance (2d Ed.) p. 413; 5 Cooley, Briefs on Insurance (2d Ed.) p. 4040; 2 Couch, Cyclopedia of Insurance Law, § 525. It is true that in this case the application for the policy, expressly made a part of it, contained a provision which we have quoted, that no statement made to or knowl-

edge of an agent as to any facts pertaining to the applicant should be considered as having been made to or brought to the knowledge of the company unless stated in either Part A or Part B of the application; but the terms of this provision make it evident that it had reference to matters relevant to the issuance of the policy and it cannot be construed as including information coming to the knowledge of an agent in the course of the performance of his duties in the collection of premiums subsequent to the issuance and delivery of the policy.

If the jury accepted the plaintiff's version of the conversation which took place between her and Barnes at the time the premiums were paid, they could reasonably find that the plaintiff paid the money with intent to continue the policies in force, that it was accepted by Barnes as paid for that purpose without the requirement of a certificate of health, and that when, the next morning, the money was paid to the manager of the Stamford office, it was accepted under circumstances charging the company with knowledge of these facts. That being so, a conclusion that there was a waiver by the company of this requirement would ordinarily have been reasonably justified.

As Barnes had no authority to waive the requirement of the company for the reinstatement of the policy, and such waiver could only arise out of the receipt of the premiums by the manager of the branch office, with the imputation to the defendant as represented by him of the facts Barnes knew, the waiver must have come into existence, if at all, at the time when the manager received the money. At that time the insured was dead. The authorities generally agree that a waiver by reason of the receipt of overdue premiums does not arise where at the time when that waiver is claimed to have occurred the insured is dead

but the insurer is ignorant of that fact. *Thompson* v. *Fidelity Mutual Life Ins. Co.*, supra, p. 566; *Miller* v. *Union Central Life Ins. Co.*, 110 Ill. 102, 107; *Union Mutual Life Ins. Co.* v. *McMillen*, 24 Ohio St. 67, 82; *Patterson* v. *Equitable Life Assur. Soc.*, 112 Ark. 171, 177, 165 S. W. 454; *Gifford* v. *Workmen's Benefit Asso.*, 105 Me. 17, 21, 72 Atl. 680; *Kansas City Life Ins. Co.* v. *Elmore* (Tex. Civ. App.) 226 S. W. 709; *Brown* v. *Knights of the Protected Ark*, 43 Colo. 289, 294, 96 Pac. 450; *Franklin Life Ins. Co. of Illinois* v. *McAfee*, 28 Ky. Law Rep. 676, 678, 90 S. W. 216; *Miller* v. *Head Camp*, 45 Ore. 192, 195, 77 Pac. 83; *Supreme Lodge Knights of Honor* v. *Jones,* 35 Ind. App. 121, 131, 69 N. E. 718; *Wright* v. *Metropolitan Life Ins. Co.*, 204 Mo. App. 124, 132, 221 S. W. 383; 3 Joyce, Insurance, p. 2543, and see *Lewis* v. *Phœnix Mutual Life Ins. Co.*, 44 Conn. 72, 91. While the reasons given in the various decisions are not entirely harmonious, the fact that courts have so generally arrived at a like result is significant.

The basis of the rule as applied in the case before us is found, we believe, in these considerations: Each policy provides that the payment of a premium shall not maintain it in force beyond the due date when the next premium is payable except as provided in it. Two due dates for the payment of premiums had passed and no waiver of the requirements of the policy for reinstatement had occurred when the insured died, so that the policy was not then in force. The policies read that the defendant "hereby insures the life of" the insured. Underlying the contractual relationship of the parties which came into being when the policies first took effect and which would be revived and continued by their reinstatement after the lapse for failure to pay premiums, is the fact that the insured is a living person. A waiver of any requirement for the

valid reinstatement of the policy is necessarily based on the assumption that the insured is still alive at the time it takes place. If at that time, without the knowledge of the insurer, the insured is dead, any relinquishment of its rights by the insurer is based upon a false premise, going to the essence of the relationship between the parties. Under these circumstances there does not arise that intentional relinquishment of a known right which in law constitutes a waiver. *Bennecke* v. *Connecticut Mutual Life Ins. Co.*, 105 U. S. 355, 361; *Norton* v. *Catholic Order of Foresters*, 138 Iowa, 464, 469, 114 N. W. 893; *Benson* v. *Metropolitan Life Ins. Co.*, 161 Mo. App. 480, 482, 144 S. W. 122; *United Order of the Golden Cross* v. *Hooser*, 160 Ala. 334, 350, 49 So. 354. Waiver of the nature of that claimed here is closely akin to a modification of the contract by mutual assent; *Perrigo* v. *Conn. Commercial Travelers Mut. Acc. Asso.*, 101 Conn. 648, 657, 127 Atl. 10; and there is the same reason for not finding a waiver where the insurer acts in ignorance of the death of the insured as exists where a contract is deemed not to have become effective because the subject-matter with which it deals is not in existence at the time the agreement is made. 1 Page, Contracts, § 261; 3 Williston, Contracts, § 1561.

The evidence would not support a conclusion that the defendant had waived the requirement in the policies that to be entitled to reinstatement at the time the plaintiff paid the premiums proof of insurability satisfactory to it must be furnished. Nor could there be a ratification of the claimed conduct of Barnes in accepting the premium without a compliance with the regulations concerning a health certificate, which would relate back to the time he accepted the money, for a binding ratification does not arise where the principal acts in ignorance of material facts, in this instance, the

death of the insured. *Seeley* v. *North,* 16 Conn. 92, 97; *Goodwin* v. *East Hartford,* 70 Conn. 18, 42, 38 Atl. 876; *Union Mutual Life Ins. Co.* v. *McMillen,* 24 Ohio St. 67, 82; Amer. Law Institute Restatement, Agency, Vol. 1, § 91; 1 Mechem, Agency (2d Ed.) § 395 and following. The basis of an estoppel in this case would be that by the conduct of the defendant the plaintiff was misled to her injury in that, in reliance upon it, she did not offer evidence of insurability satisfactory to the defendant; *Bernhard* v. *Rochester German Ins. Co.,* 79 Conn. 388, 394, 65 Atl. 134; *Cahill* v. *Royal Ins. Co.,* 94 Conn. 118, 123, 108 Atl. 544; but such an estoppel would not arise here, for this, if for no other reason, that at no time after the payment to Barnes could there have been a compliance with this provision in the policy and hence she could have suffered no prejudice by the defendant's conduct.

In *Benanti* v. *Delaware Ins. Co.,* 86 Conn. 15, 19, 84 Atl. 109, a case somewhat analogous to the one before us, we said: "Had the defendant retained the premium prior to the loss and after it knew the breaches of these conditions, it would have waived the right to avoid the policy through them. The risk of the policy upon breach of this condition precedent never attached. It might have been given life by being adopted or ratified prior to the loss; after that event it could not be. A waiver or an estoppel predicated upon facts subsequent to the loss could not affect the rights of the plaintiff under the policy. Hence, if the knowledge of the breach came to the insurer after the loss, its retention of the premium after such knowledge did not affect the plaintiff's rights, and therefore can furnish no foundation for a waiver or estoppel."

As the evidence would not support the verdict for the plaintiff, the trial court was in error in not setting it aside. This conclusion, and the reasons therefor,

make it unnecessary and probably useless to consider the claimed errors in the conduct of the trial.

There is error, the judgment is set aside and the case remanded with direction to grant the motion to set the verdict aside.

In this opinion the other judges concurred.